UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIM. NO. 3:CR-19-250 |
| v. : | (Judge Caputo) |
| MARTIN EVERS, : Defendant : | |

**INDICTMENT**

FILED
HARRISBURG, PA

AUG 2 8 2019

Per _____ Deputy Clerk

THE GRAND JURY CHARGES:

COUNT 1
21 U.S.C. § 841(a)(1)
(Unlawful Distribution and Dispensing of a Controlled Substance)

At times material to this Indictment:

1. The defendant, MARTIN EVERS (EVERS), was a physician licensed by the Commonwealth of Pennsylvania. EVERS held a Pennsylvania medical license, as well as a Drug Enforcement Administration (DEA) registration number, and operated a practice, Bon Secours Medical Group, within the Middle District of Pennsylvania. EVERS represented himself to be a specialist in internal medicine.

2. The Controlled Substances Act (the Act) governs the manufacture, distribution, and dispensing of controlled substances in the United States. Under the Act, there are five schedules of controlled

substances — Schedules I, II, III, IV, and V. Controlled substances are scheduled into these levels based upon their potential for abuse, among other things. Abuse of Schedule II controlled substances may lead to severe psychological and/or physical dependence.

3. Methadone is a synthetic opioid that contains methadone hydrochloride, a Schedule II controlled substance. Methadone is roughly twice as potent as morphine in a single dose, but becomes much more potent than morphine with accumulation in the body. In chronic users of high-dose opioids, methadone may be 10 times as potent as the morphine equivalent.

4. Fentanyl is a Schedule II narcotic (opioid) pain medicine that has a high risk for addiction. Fentanyl is 70 -100 times as potent as morphine. A fentanyl transdermal system (fentanyl patch) contains a high concentration of the potent Schedule II opioid agonist, fentanyl.

5. Schedule II opioid substances which include fentanyl, hydromorphone, methadone, morphine, oxycodone, and oxymorphone have the highest potential for abuse and associated risk of fatal overdose due to respiratory depression.

6. Benzodiazepines, such as diazepam, are Schedule IV controlled substances commonly known as tranquilizers. When combined with other central nervous system (CNS) depressants such as alcoholic drinks and opioids, the potential for toxicity and fatal overdose increases.

7. Title 21, United States Code, Section 841(a)(1), provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally ... manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance."

8. Title 21, United States Code, Section 802(10), provides that the term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for delivery.

9. The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical.

The term "distributor" means a person who so delivers a controlled substance or a listed chemical.  (21 U.S.C. § 802(11)).

10.   Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

11.   The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the

4

person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

12. The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances. Chapter 16.92 provides minimum standards that shall be followed when prescribing or dispensing controlled substances and include; (a) the taking and recording of an initial medical history, (b) reevaluations of the condition diagnosed and the controlled substance involved, (c) patient counseling, and maintenance of patients' medical records.

13  As a medical doctor, EVERS was authorized to prescribe and/or dispense to patients Schedule II through V controlled substances and to prescribe medicine to patients, including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

14. From in or about March 2013 through September 11, 2014, "K.D." was a patient of EVERS.

5

15. Throughout the doctor/patient relationship, EVERS was aware that "K.D." suffered from an opioid addiction.

16. EVERS continued to knowingly and intentionally prescribe opioid medications to "K.D." despite knowing that "K.D." was chronically opioid dependent.

17. On or about September 2, 2014, within the Middle District of Pennsylvania, the defendant,

MARTIN EVERS,

did knowingly and intentionally distribute and dispense to "K.D.", and caused to be distributed and dispensed to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose, a controlled substance containing fentanyl, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

THE GRAND JURY FURTHER CHARGES:

## COUNT 2
21 U.S.C. § 841(a)(1)
(Unlawful Distribution and Dispensing of a Controlled Substance Resulting in Death and Serious Bodily Injury)

18. The Grand Jury incorporates by reference the allegations set forth in paragraphs 1 through 16 of this Indictment.

19. On or about September 9, 2014, within the Middle District of Pennsylvania, the defendant,

MARTIN EVERS,

did knowingly and intentionally distribute and dispense to "K.D.", and caused to be distributed and dispensed to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose, a controlled substance containing methadone, a Schedule II controlled substance, and a controlled substance containing diazepam (Valium), a Schedule IV controlled substance, and serious bodily injury and death of a person known to the grand jury as "K.D." resulted from the use of the

controlled substances distributed and dispensed by the defendant.

In violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

A TRUE BILL



DAVID J. FREED
UNITED STATES ATTORNEY

DATE: 8/28/2019

By: MICHELLE OLSHEFSKI
ASSISTANT U.S. ATTORNEY