# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO.  3:19-CR-250 |
| | : | |
| MARTIN EVERS | : | JUDGE MARIANI |
| | : | |
| Defendant. | : | ELECTRONICALLY FILED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS THE SEARCH & SEIZURE OF 104 BENNETT AVENUE, SUITE 2C, MILFORD, PA ON AUGUST 6, 2019 PURSUANT TO *FRANKS v. DELAWARE*

Patrick A. Casey
Frank J. Brier
Suzanne P. Conaboy
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503

Attorney for Defendant,
Martin L. Evers, M.D.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ....................................... 1

     A.    Criminal Charges ....................................................................... 1

     B.    Brief Procedural History ............................................................ 1

          1.   Martin L. Evers, M.D. ...................................................... 2

          2.   The Government's search and seizure of records from 104 Bennett Avenue, Suite 2C in Milford, Pennsylvania on August 6, 2019 ............................................................................... 3

III.    QUESTION PRESENTED .................................................................. 5

IV.    AUTHORITY ...................................................................................... 5

     A.    Constitutional ............................................................................ 5

     B.    Common Law ............................................................................ 6

          1.   Lacking probable cause ................................................... 6

          2.   *Franks*: DEA knowingly provided false information and acted in reckless disregard for the truth ................................. 12

          3.   Substantial preliminary showing that the affidavit contained False statements which were made knowingly or in reckless disregard for the truth ................................................ 13

          4.   The false statements contained in the affidavit were material to the finding of probable cause .................................... 17

     CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Brady v. Maryland*, 383 U.S. 83 (1963) .................................................................. 15

*Franks v. Delaware*, 438 U.S. 154 (1978) .................................................. 12, 16, 17

*Illinois v. Gates*, 462 U.S. 213 (1983).......................................................... 7, 13

*Sherwood v. Mulvihill*, 113 F.3d 396 (3d Cir. 1997) ............................................. 17

*United States v. Bartee*, 479 F.2d 484 (10th Cir. 1973)........................................ 7

*United States v. Calisto*, 838 F.2d 711 (3d Cir. 1988) ........................................ 17

*United States v. Carpenter*, 360 F.3d 591(6th Cir. 2004) ....................................... 8

*United States v. Godofsky*, 943 F.3d 1011 (6th Cir. 2019) ............................. 6, 7, 13

*United States v. Golson*, 743 F.3d 44 (3d Cir. 2014) ............................................. 8

*United States v. Jones*, 570 F.2d 765 (8th Cir. 1978) ........................................... 10

*United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013) ....................................... 7

*United States v. Leon*, 468 U.S. 897 (1984) ........................................... 11, 18

*United States v. Maynard*, 278 Fed. App'x. 214 (3d Cir. 2008) ................... 6, 7, 13

*United States v. Miller*, 891 F.3d 1229 (10th Cir. 2018) ...................................... 7

*United States v. Moore*, 423 U.S. 122 (1975) ........................................... 6, 7, 13

*United States v. Ritter*, 416 F.3d 256 (3d Cir. 2005) ............................................ 8

*United States v. Rosen*, 582 F.2d 1032 (5th Cir. 1978)........................................... 11

*United States v. Sabean*, 885 F.3d 27 (1st Cir. 2018) ............................................ 7

*United States v. Tighe*, 551 F.2d 18 (3d Cir. 1977)  ............................................. 6, 13

*United States v. Volkman*, 736 F.3d 1013 (6th Cir. 2013) ........................................ 7

*United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) ........................................ 12, 17

*Warden v. Hayden*, 387 U.S. 294 (1967)  ................................................ 11

*Wong Sun v. United States*, 371 U.S. 471 (1963)  .................................................. 13

## STATUTES

U.S. Const. IV amend. ............................................................................................. 5

21 U.S.C. § 841(a)(1) ................................................................................ 1, 4, 6, 13

21 U.S.C. § 841(b)(1)(c)  .......................................................................................... 1

## I.   INTRODUCTION

The United States conducted a search and seizure of records from the professional medical office of Martin L. Evers, M.D. located at 104 Bennett Avenue, Suite 2C, in Milford, Pennsylvania on August 6, 2019.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Criminal Charges.

Martin L. Evers, M.D. was criminally charged on August 28, 2019, with two criminal counts:  Count 1 - Violation of 21 U.S.C. § 841(a)(1), which alleges that Dr. Evers knowingly and intentionally dispensed to "K.D.," and caused to be distributed and dispensed to "K.D.," outside the usual course of professional practice and not for a legitimate medical purpose; and Count 2 - which alleges Dr. Evers knowingly caused to be distributed to "K.D." outside the usual course of professional practice and not for a legitimate medical purpose methadone and diazepam allegedly causing the death of "K.D." in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c).  "K.D." died on September 11, 2014.

### B.   Brief Procedural History.

On August 8, 2019, agents from the Drug Enforcement Administration executed a search warrant on the professional medical office of Bon Secours

Community Hospital and Dr. Evers at 104 Bennett Avenue, Suite 2C, Milford, Pennsylvania.

On September 4, 2019, Dr. Evers was arrested, arraigned, entered a plea of not guilty, and was released under conditions. (ECF Nos. 7, 8, 9.)

On June 15, 2020, The Honorable Robert D. Mariani issued an Order establishing a pretrial motion deadline of July 23, 2020 with jury selection and trial to be scheduled after this deadline expiration. (ECF No. 50.)

### 1.   Martin L. Evers, M.D.

Dr. Evers graduated from the University of Medicine and Dentistry of New Jersey in 1985. In 1990 he began as a clinical instructor in medicine and taught at different medical schools until 2000. He entered private practice in 2000 as a doctor of internal medicine at Bon Secours Community Hospital. Bon Secours is a large non-profit healthcare organization with offices located at 104 Bennett Avenue, Suite 2C in Milford, Pennsylvania and a hospital in Port Jervis, New York. Dr. Evers has been a "W-2" employee of Bon Secours since 2000.

2

2.    **The Government's search and seizure of records from 104 Bennett Avenue, Suite 2C in Milford, Pennsylvania on August 6, 2019.**

On August 1, 2019 Drug Enforcement Administration Diversion Investigator Gary E. Derr II submitted to United States Magistrate Judge Karoline Mehalchick an Application for a Search Warrant to search and seize records from Dr. Evers' professional medical office located at 104 Bennett Avenue, Suite 2C, Milford, PA 18337. (*See* Mot. to Suppress at Exhibit A.)[1] The Application was accompanied by a Search Warrant. (*See* Exhibit B.)

A photograph of the professional office building and the address (104 Bennett Avenue, Suite 2C, Milford, PA 18337) were referenced by the Search Warrant as Attachment "A." (*See* Exhibit C.)

Attached to the Search Warrant was "Attachment B," which described those things to be searched for and seized. (*See* Exhibit D.)

Attached to the Search Warrant is a 32-page Affidavit in Support of An Application for Search and Seizure Warrants (or Affidavit of Probable Cause).[2] (*See* Exhibit E.)

---

[1] The Exhibits referenced in this memorandum are attached to the Motion to Suppress the Search & Seizure of 104 Bennett Avenue, Milford, PA on August 6, 2019 which were filed under seal on July 23, 2020.

[2] Dr. Evers is aware of only one warrant having been authorized.

The Affidavit of Probable Cause states:  "I make this affidavit in support of an application for a search warrant for medical records in paper and/or electronic form, and evidence of *illegal prescribing* that is stored at premises owned, leased, maintained or operated by Doctor Martin L. Evers, DEA Registration BE1255973 . . . ."  (*Id.* ¶ 1.)  (Emphasis added.)

Investigator Derr became a police officer in 1995 and participated as the head of the Perry County drug task force from 2000 to 2009.  (*Id.* ¶ 2.) After matriculating through a 12-week course at the DEA training academy in Quantico, VA, he became a Diversion Investigator.  (*Id.*)  Investigator Derr became a DEA investigator in 2017.  (*Id.*)  It appears that the instant warrant application was Investigator Derr's first search as a DEA investigator.  Investigator Derr is not a medical doctor and has never been qualified in a court as an expert on prescribing controlled substances.  There is no expert opinion is contained in the Affidavit of Probable Cause.  (*See generally* Exhibit B.)  Investigator Derr, based upon his experience as a police officer and a 12-week course in "diversion investigation," offered the following opinion: "Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. 841(a)(1) [sic] have been committed by Martin L. Evers.  There is also

4

probable cause to search the premises as described in Attachment A for evidence of these crimes as described in Attachment B." (*Id.* ¶ 4.)

## III.   QUESTION PRESENTED

Did the Government violate the Fourth Amendment prohibition against unreasonable searches and seizures when it failed to provide sufficient probable cause and knowingly provided false information with reckless disregard for the truth in its Affidavit of Probable Cause attached to its application to search Dr. Evers' professional medical offices located at 104 Bennett Avenue, Suite 2C, Milford, PA in August of 2019?

Answer:    Yes.

## IV.   AUTHORITY

### A.   Constitutional.

The Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. IV amend.

5

**B.      Common Law.**

**1.      Lacking probable cause.**

Dr. Evers was a practicing physician registered with the DEA to prescribe and distribute Schedule II-V controlled substances.  The issuance of a DEA registration number means that the government recognizes Dr. Evers' issuances of prescriptions to his patients as per se legal.  Implicit in the registration of a physician is the understanding that he is authorized to act as a physician.  *United States v. Moore*, 423 U.S. 122, 141 (1975).  Dr. Evers must act within the course of professional medical practice and for legitimate medical purposes to enjoy the preemptive protection from 21 U.S.C. § 841(a)(1).  Criminal prosecutions no longer "turn on the opinions of federal prosecutors," but instead hinge on evidence that the physician acted outside the course of usual medical practice and for no legitimate medical purpose.  *United States v. Maynard*, 278 Fed. App'x. 214, 218 (3d Cir. 2008); *United States v. Tighe*, 551 F.2d 18, 21 (3d Cir. 1977); *United States v. Godofsky*, 943 F.3d 1011, 1021 (6th Cir. 2019).

Generally, there are two categories which the Government must show a doctor acting as a "pusher," not as a physician.  *Moore*, 423 U.S. at 143.

Category 1 is proof of a corrupt relationship influencing the decision to prescribe.  A doctor having sex with a patient, writing prescriptions with an

expectation of a kickback of pills to feed his own addiction, or charging cash per pill are examples. *United States v. Sabean*, 885 F.3d 27, 34 (1st Cir. 2018); *United States v. Bartee*, 479 F.2d 484, 489 (10th Cir. 1973).

Category 2 is proof that the physician is not performing those steps associated with the usual course of professional medical practice. A doctor not performing a physical examination, not taking a personal history, not taking a medical history, failing to recommend other treatments, ignoring test results, ignoring evidence of diversion, receiving patients requesting medication for non-medical reasons are some examples. *Moore*, 423 U.S. at 142-43; *Godofsky*, 943 F.3d at 1028; *United States v. Miller*, 891 F.3d 1229, 1227 (10th Cir. 2018); *Maynard*, 278 Fed. App'x. at 215; *United States v. Volkman*, 736 F.3d 1013, 1018 (6th Cir. 2013); and *United States v. Joseph*, 709 F.3d 1082, 1088 (11th Cir. 2013).

The Government offered no evidence of criminal activity. No evidence was offered which would strip Dr. Evers of the protection of his DEA registration, and, therefore, the physician's exception to the general prohibition against distribution of controlled substances remains.

The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

7

Probable cause may be established where a police officer personally observed criminal conduct. *United States v. Golson*, 743 F.3d 44, 54-55 (3d Cir. 2014). Despite having conducted surveillance of Dr. Evers, the police made no observations of criminal conduct by Dr. Evers. The government offered no surveillance evidence–electronic or otherwise–which raised evidence of criminal conduct by Dr. Evers. To justify a search, the circumstances must indicate why evidence of illegal activity will be found in "a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

Probable cause from a demonstrably reliable, known informant or independent source, which can be independently corroborated, can be relied upon. *United States v. Ritter*, 416 F.3d 256, 263-64 (3d Cir. 2005). No cooperating informant evidence is offered in this Affidavit of Probable cause.

A review of the Affidavit reveals that the DEA reviewed prescription information with respect to approximately 64 patients. The DEA reported that the information is taken from the Prescription Drug Monitoring Program Report ("PDMP"). (*See* Exhibit E ¶ 40.) Yet, the DEA did not provide to the magistrate judge a reference which would allow the judicial officer to discern whether a particular prescription was written within or outside of the usual course of professional medical practice. The DEA provided no information regarding the

medical condition of the patients and offered no evidence as to the medical ailment for which Dr. Evers treated these patients.  The DEA offered no authoritative reference for a reviewing judicial officer to discern whether the prescriptions amounts are legal versus illegal.  The DEA offered no expert opinion from a physician.  Out of 64 patients listed, the DEA presented six interviews,[3] none of which provide evidence of practicing outside the usual course of professional practice.  Indeed, the interviews highlight the fact that Dr. Evers preformed all the tasks of a physician who was practicing in the usual course of professional medical practice would (e.g., physical examinations, objective tests, urinalysis tests, and dosage reductions) for patients suffering from the most serious chronic pain conditions: multiple sclerosis, diabetes, herniated disc, lupus, HIV, hip replacement, surgery to replace L2 and L3, Crohn's disease, rheumatoid arthritis, firbromyalgia, polyneuropathy, herniated bulging discs.  (*Id.* ¶ 28.)

The DEA specifies four former patients who died.  Three of the four deaths were deemed "accidental" while the fourth was "suicide."  (*Id.* ¶ 33.)  There is no

---

[3] It will be explained below that Investigator Derr suppressed numerous interviews the DEA conducted with several witness who told the DEA that Dr. Evers always practiced within the usual course of professional medical practice and prescribed only for legitimate medical purposes.

evidence that Dr. Evers' prescribing practices were outside the usual course of professional practice. The finding of accident or suicide corroborates that no agency faulted Dr. Evers for the deaths of these patients.

The DEA offers "Pharmacy Intelligence and Analysis." (*Id.* ¶¶ 34-39.) None of the pharmacists said that Dr. Evers was outside the usual course of professional practice, nor did any claim that he prescribed for an illegitimate non-medical purpose. *United States v. Jones*, 570 F.2d 765, 768 (8th Cir. 1978) ("The prosecution did not introduce any evidence concerning the doctor-patient relationship existing with respect to these prescriptions, nor did it present other proof that the prescriptions had not been issued for a proper medical purpose.") Indeed, the pharmacists, like the DEA agents, do not know the history, treatment, tests, or findings of examinations of these patients. A pharmacist has a different duty under the law regarding prescribing and filling prescriptions. Not only is there no evidence of criminal wrongdoing by Dr. Evers, the Walmart pharmacist recognized that "Dr. EVERS will call to explain why he is prescribing high doses on questionable prescriptions." (Exhibit E ¶ 37.) The CVS pharmacist said that "when contacting Dr. Evers for due diligence procedures and verifications, Dr. Evers confirmed the prescriptions as written." (*Id.* ¶ 39.)

The DEA offered literally no evidence which would cause one to have a reasonable belief that Dr. Evers committed a crime or that the fruits of a crime would be discovered at his professional medical office. Therefore, the Government is unable to show a nexus between the items to be seized and the criminal behavior. *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

Law enforcement could have utilized undercover police officers or cooperating witnesses posing surreptitiously as patients and conducted a consensual recording of the patient-doctor interaction. *United States v. Rosen*, 582 F.2d 1032, 1033-34 (5th Cir. 1978) (undercover DEA agents posed as patients). This was not done.

The DEA cannot save this search warrant under a good-faith theory. Under the good-faith exception to the exclusionary rule, "evidence seized in reasonable, good-faith reliance on a search warrant" need not be excluded, even if the warrant turns out to have been unsupported by probable cause. *United States v. Leon*, 468 U.S. 897, 905 (1984). As the Court explained in *Leon*, the good-faith exception does not apply if a warrant "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. When applying the standard, the Court must consider the objective reasonableness not only of "the officers who eventually executed the warrant, but also the officers

11

who originally obtained it or who provided information material to the probable-cause determination." *Id.* at 923 n.24.  Thus, the Court must ask whether an objectively reasonable officer could think the affidavit established probable cause. An objectively reasonable officer could not have thought the Affidavit of Probable Cause in this case supported a reasonable belief that a crime was being committed, and that there was fruit of that crime, to be found at 104 Bennett Avenue, Milford, PA 18337 because the Affidavit is devoid of incriminating evidence. *Id.* at 923. Moreover, the warrant is so facially deficient that the executing officers could not reasonably have presumed it to have been valid. *Id.*

### 2. *Franks*: DEA knowingly provided false information and acted in reckless disregard for the truth.

In *Franks v. Delaware*, 438 U.S. 154, 165 (1978), the Supreme Court provided a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

First, the defendant must make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383.

12

3. **Substantial preliminary showing that the affidavit contained false statements which were made knowingly or in reckless disregard for the truth.**

The DEA sought judicial approval of an application for a search warrant to search and seize at the professional medical offices of Dr. Evers located 104 Bennett Avenue, Suite 2C, Milford, Pennsylvania.

No warrant could issue for his professional medical offices without evidence of a crime.[4] To establish probable cause of illegal activity, it was necessary for the DEA to offer reliable evidence that Dr. Evers acted not as a physician practicing in good faith treatment of his patients, but as a common drug dealer. *Moore*, 423 U.S. at 143. That is, reliable evidence that Dr. Evers practiced outside the usual course of professional practice and for no legitimate medical purpose. *Maynard*, 278 Fed. App'x. at 218; *Tighe*, 551 F.2d at 21; *Godofsky*, 943 F.3d at 1021.

In its concluding section of the Affidavit of Probable Cause it states:

> For all of the foregoing reasons, there is probable cause to believe that Dr. EVERS has engage in the distribution of controlled substances outside the scope of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1) . .

---

[4] *Gates*, 462 U.S. 238 (a fair probability that contraband or evidence of a crime will be found in a particular place); *Wong Sun v. United States*, 371 U.S. 471, 479 (1963) ("It is basic that an arrest . . . must stand upon firmer ground than mere suspicion.")

> . [and] there is probable cause to believe that
> evidence of those violations . . . will be found in the
> Target Location."

(*See* Exhibit E ¶ 51.)  Thus, the DEA has no factual evidence.  Instead, the DEA is

reduced to offering the medical opinion of a police officer.  Clearly, this is

constitutionally deficient.

Investigator Derr not only repeated these lay opinions in the 32-page

Affidavit of Probable Cause, but more disturbingly, he twisted the facts of others

when he was on actual notice from the patients that what he was presenting in the

Affidavit was false.  In the Declaration of Investigator John P. Kravitz it is

disclosed that the defense interviewed many of the patient-witnesses identified in

the Affidavit of Probable Cause.  (*See* Exhibit G (Decl. of John Kravitz.)  Listed in

the Kravitz Declaration are 49 interviews of Dr. Evers' patients, many of whom are

also listed in the Affidavit of Probable Cause.

The Kravitz Declaration states:

> Based upon my interviews and the information
> presented by the United States in the Affidavit of
> Probable Cause, the witnesses stated that Dr. Evers at
> all times practiced within the usual course of
> professional practice and always prescribed
> medication for legitimate medical reasons.

(*Id.* ¶ 16.)

14

In several instances Investigator Derr and his fellow agents spoke with patient-witnesses months *before* the DEA's application for the search warrant on August 1, 2019.  In those instances, the patient-witnesses *told* Investigator Derr in their own wording that Dr. Evers practiced within the usual course of professional medical practice and prescribed only for legitimate medical purposes.  (*See* Exhibit H.) (*See* John Kravitz Declaration dated Aug. 6, 2020 attached hereto as Exhibit "H.")  Thus, when preparing the 32-page Affidavit of Probable Cause individually listing dozens of patients and their prescriptions in a fundamentally untrue presentation to Magistrate Judge Mehalchick, Investigator Derr knowingly and intentionally misled the magistrate judge by suppressing witness statements which said that Dr. Evers practiced as a medical professional within the usual course of professional medical practice.[5]  This offer of proof is substantial evidence warranting a hearing at which the patient-witnesses would be called to testify that the statements by Investigator Derr are false, and that he knew them to be false

---

[5] Given the magnitude of law enforcement misconduct in the preparation of the false Affidavit of Probable Cause, Dr. Evers calls upon the Government to disclose to the parties and the Court all DEA-6 summaries of interviews (and original interview notes) available to affiant-Investigator Derr before his submission of the Search Warrant Application on August 1, 2019.  *Brady v. Maryland*, 383 U.S. 83, 88 (1963).

before submitting the Affidavit of Probable Cause to the magistrate judge because the witnesses spoke to Investigator Derr (and his fellow DEA agents) and told him that Dr. Evers practiced within the usual course of professional medical practice and prescribed only for legitimate medical purposes. *Franks*, 438 U.S. at 171 (upon substantial preliminary showing of false statement material to probable cause Fourth Amendment requires a hearing).

Investigator Derr intentionally, or with reckless disregard for the truth, omitted material information from the Affidavit of Probable Cause. Investigator Derr intentionally mischaracterized the patient's medical care by Dr. Evers to suggest that Dr. Evers did not practice in the usual course of professional practice when Investigator Derr knew that the patient-witness told him or his fellow agents the opposite. This is of particular significance since Dr. Evers' prescribing conduct is per se legal, and the DEA is seeking the most intrusive of search warrants–the seizure of patients' medical information, as well as intrusion upon the doctor-patient medical care.

Investigator Derr also placed information in the Affidavit of Probable Cause which mischaracterized Dr. Evers' treatment of patients who were never interviewed by law enforcement. "Based upon my interviews and the information presented by the United States in the Affidavit of Probable Cause, some of the

16

witnesses were never interviewed by law enforcement . . . ." (*See* Exhibit G ¶ 18.)

In reckless disregard for the truth and having never interviewed the patient (or

anyone who would have had knowledge of the medical care), Investigator Derr

mischaracterized the medical care provided to the patient by Dr. Evers suggesting

that Dr. Evers was practicing outside the usual course of medical practice when the

patient expressly believed the opposite.  The DEA acted in reckless disregard for

the truth when it made no attempt to interview the patient, and yet proceeded to

mischaracterize the doctor-patient care as something outside the usual course of

professional medical practice.

    **4.**    **The false statements contained in the affidavit were
material to the finding of probable cause.**

    "Under *Franks*, falsehoods are deemed material to the finding of probable

cause if the affidavit 'with the . . . false material set to one side . . . is insufficient to

establish probable cause.' *Franks*, 438 U.S. at 156 [ ]." *Sherwood v. Mulvihill*,

113 F.3d 396, 399 (3d Cir. 1997).  Where there are knowing falsehoods and

omissions in reckless disregard for the truth, they must be excised from the

Affidavit. *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006).

    Excising of the falsehoods and false statements by omission (*United States

v. Calisto*, 838 F.2d 711, 714-16 (3d Cir. 1988)), leaves Investigator Derr's

Affidavit devoid of "a fair probability that contraband or evidence of a crime will be found" at the professional medical offices of Dr. Evers at 104 Bennett Ave. Milford, PA.

Again, the good-faith-of-the-officer theory cannot not save the search warrant. Under the good-faith exception to the exclusionary rule, "evidence seized in reasonable, good-faith reliance on a search warrant" need not be excluded, even if the warrant turns out to have been unsupported by probable cause. *Leon*, 468 U.S. at 905. As the Court explained in *Leon*, however, the good-faith exception does not apply, and suppression of the evidence is necessary, if the issuing magistrate relied on an affidavit that the affiant knew was false or would have known was false had she or he not acted in reckless disregard for the truth. *Id.* at 923.

## **CONCLUSION**

Where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires the Court to grant a hearing upon the defendant's request. *Franks*, 438 U.S. at 155-56.

Defendant Martin L. Evers has made a substantial preliminary showing that DEA

Investigator Derr made false statements knowingly, or in reckless disregard for the

truth, in the Affidavit of Probable Cause which were material to a finding of

probable cause.  Dr. Evers requests a factual hearing.  *Id.*

WHEREFORE, Defendant Martin L. Evers respectfully requests this Court

grant the Motion to Suppress the Search & Seizure of 104 Bennett Avenue, Suite

2C, Milford, PA on August 6, 2019 and exclude from the trial any fruits of that

search; or, in the alternative, grant a factual hearing.

Respectfully submitted,

/s/ Patrick A. Casey
Patrick A. Casey
Frank J. Brier
Suzanne P. Conaboy

Attorney for Defendant,
Martin L. Evers, M.D.

Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA  18503
(570) 342-6100

Date:  August 6, 2020

19

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(3)</u>**

I, Patrick A. Casey, hereby certify that the foregoing Memorandum of Law in Support of Motion to Suppress the Search & Seizure of 104 Bennett Avenue, Suite 2C, Milford, PA on August 6, 2019 in compliance with Local Rule 7.8(b)(3). The brief contains 3,906 words as computed by Microsoft Office Word.

<u>/s/ Patrick A. Casey</u>
Patrick A. Casey

Date:  August 6, 2020

## CERTIFICATE OF SERVICE

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Suppress the Search & Seizure of 104 Bennett Avenue, Suite 2C, Milford, PA on August 6, 2019 was served upon the following counsel of record via the Court's ECF system on this 6th day of August 2020.

Michelle L. Olshefski, Esquire
U.S. Attorney's Office
P.O. Box 309
235 North Washington Avenue
Scranton, PA 18501


/s/ Patrick A. Casey
Patrick A. Casey