UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-19-250 |
| | : | |
| v. | : | (JUDGE MARIANI) |
| | : | |
| MARTIN EVERS, | : | Electronically filed |
| Defendant | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

COMES NOW, the United States of America, by and through David J. Freed, United States Attorney for the Middle District of Pennsylvania, and undersigned counsel, and respectfully submits the following response to defendant's motion to dismiss the indictment. The defendant claims the Controlled Substances Act, as applied to him, is unconstitutionally vague and that the indictment is legally insufficient. The defendant is wrong.

## I.    Introduction

On August 28, 2019, a federal grand jury returned an indictment charging the defendant with two federal crimes. Count 1 charges a violation of 21 U.S.C. § 841(a)(1), the knowing and intentional

1

distribution and dispensing of fentanyl, a Schedule II controlled substance to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose.   Count 2 charges a violation of 21 U.S.C. § 841(a)(1), the knowing and intentional distribution and dispensing of methadone, a Schedule II controlled substance, and diazepam (Valium), a Schedule IV controlled substance, to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose, resulting in death. (Doc. 1).

K.D. was a 39-year-old woman who died on September 11, 2014. She had been "treated" with high doses of short and long acting opioid analgesics and had been demonstratedly incapable of compliantly taking that class of drugs.   K.D. took her medication in a manner that was indicative of loss of control over the use of the controlled substances.   The medical records document that she underwent several episodes of inpatient treatment for "substance use disorder" and detoxification in order to eliminate these drugs from her system.   The defendant was aware from the outset through the efforts of K.D.'s family and through the medical records that K.D. suffered from opioid

addiction, and other aberrant drug use.   The defendant knew that K.D. was incapable of taking controlled substances in a controlled fashion. He prescribed them to her anyway.   K.D. required time and attention for her medical care.   The defendant used his prescription pad to move her along.[1]   The defendant is criminally responsible for the death of K.D.

## II.   Motion to Dismiss – Void-for-Vagueness

The defendant's motion to dismiss requests that this Court reject almost 100 years of settled jurisprudence on the scope and viability of 21 U.S.C. § 841(a)(1) based upon a biased recitation of the facts and evidence in this case.   The defendant claims that the law (the Controlled Substances Act) does not apprise him that as a physician, he could be held accountable for the unlawful distribution of controlled substances resulting in death. (Doc. 68, p. 6).   The Court should not grant the defendant's motion.[2]   The offenses and regulations

---

[1]   It is believed that pursuant to the defendant's employment contract with Bon Secours Health System, the defendant's salary was, in part, based on performance bonuses which included the number of professional encounters, *i.e.*, number of patients seen.

[2]   Footnote [1] of the defendant's brief sets out a partial list of

promulgated in 21 U.S.C. § 841(a)(1) and 21 C.F.R. § 1306.04 are not unconstitutionally vague.   What the defendant argues for is simply not the law.   It is not the law in this district.   It is not the law anywhere in the United States.

"A statute is void on vagueness grounds if it: (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.' " *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008), quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000).   "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his conduct is proscribed." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).   It does not mean that the statute must define every factual scenario that may arise. *United States v. Biro*, 143 F.3d 1421 (11th Cir. 1998).   Even the existence of "marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the

---

cases rejecting his arguments.   The Government incorporates that footnote in support of its argument.

4

language too ambiguous to define a criminal offense." *Id.* at 1430 (citation omitted); *see also United States v. Williams*, 553 U.S. 285, 306 (2008) ("Close cases can be imagined in any statute.   The problem that poses is addressed not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt.").   Moreover, ignorance of the fact that one's conduct is a violation of the law is no defense to criminal prosecution. *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted).

Applying these principles, the Controlled Substances Act gave the defendant more than adequate notice that his conduct was illegal.   The defendant was a medical practitioner.   We can assign to him, at a minimum, ordinary intelligence.   He made it through many years of school.   Moreover, doctors do not practice in a vacuum.   They are supposed to be, and surely the defendant was, receiving continuing medical education and the like.   Thus, there is no doubt that the defendant was advised about what was in the usual course of professional practice and what was not.   While the defendant's argument is artful and creative, it is not the law.

### a.  *History of the Controlled Substances Act – Notice*

The unlawful distribution of pharmaceutical controlled substances constitutes a significant component of this country's drug abuse problem and subsequent untold numbers of unnecessary deaths. Prosecutions of individuals involved in the unlawful distribution of pharmaceutical controlled substances present unique issues not normally encountered in a drug distribution prosecution.   These unique issues, as well as the application of accepted procedures to pharmaceutical controlled substances cases, will be addressed in this response.

Title 21 U.S.C. § 841(a)(1) provides:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

The opening phrase of § 841(a)(1)—"except as authorized by this subchapter"—segregates pharmaceutical cases from drug trafficking. Because medical professionals are authorized to handle controlled substances pursuant to their DEA registrations, a prosecutor must

6

show that the medical professional acted "outside the usual scope of professional practice without a legitimate medical purpose."

Congress first addressed the problem of unlawful drug distribution with the passage of the Harrison Narcotics Tax Act of 1914, under which physicians could be criminally liable for unlawfully prescribing controlled substances. *See Jin Fuey Moy v. United States*, 254 U.S. 189 (1920). The Supreme Court later explained that liability under the Harrison Act did not extend to a physician who acted within the bounds of "fair medical standards." *Linder v. United States*, 268 U.S. 5, 22 (1925). In 1975, the Supreme Court was presented with this issue again, this time under the then new Controlled Substances Act.

Over forty years ago, the Supreme Court decided *United States v. Moore*, 423 U.S. 122, 124 (1975), which settled the issue of whether doctors could be prosecuted under the Controlled Substances Act. In the early 1970s, shortly after Congress passed the Controlled Substances Act, law enforcement officers in the Washington, D.C. area noticed large quantities of pharmaceutical methadone on the street. Methadone is a strong narcotic used primarily to treat heroin addiction.

Investigation showed that a local physician, Dr. Thomas Moore, Jr., was

the primary source of the methadone.   Investigators found that in less

than six months in 1971 and 1972, three pharmacies in the District of

Columbia filled 11,169 prescriptions for 800,000 methadone tablets

written by Dr. Moore.   On several days during this period he wrote

more than 100 prescriptions per day for methadone.   *Moore*, 423 U.S.

at 126.   *Moore* was indicted in the United States District Court for the

District of Columbia under 21 U.S.C. § 841(a)(1) for 639 counts of

knowing and unlawful distribution and dispensing of methadone, a

Schedule II controlled substance.   The number of counts in the

indictment was reduced before trial and the doctor subsequently was

convicted of twenty-two counts.   On appeal, the United States Court of

Appeals for the District of Columbia Circuit reversed the doctor's

conviction, finding that a physician registered under the Controlled

Substances Act was exempt from prosecution under 21 U.S.C. §

841(a)(1).   The Supreme Court reversed, finding that "registered

physicians can be prosecuted under § 841 when their activities fall

outside the usual course of professional practice." *Id.* at 124.

The Court noted that historically "[p]hysicians who stepped outside the bounds of professional practice could be prosecuted under the Harrison Act." *Id.* at 132.   The Court further emphasized that the Controlled Substances Act "was intended to 'strengthen,' rather than to weaken 'existing,' law enforcement authority in the field of drug abuse." *Id.*   The Court concluded that "the scheme of the statute, viewed against the background of the legislative history, reveals an intent to limit a registered physician's dispensing authority to the course of his 'professional practice.'" *Id.* at 140.

Thus, as explained above, § 841(a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to distribute or dispense a controlled substance."   Therefore, to violate § 841(a)(1), a doctor, pharmacist, or other medical professional must have: (1) distributed or dispensed a controlled substance, (2) done so knowingly or intentionally, and (3) acted other than for a legitimate medical purpose in the usual course of professional practice.   *United States v. Brown*, 553 F.3d 768, 780-81 (5th Cir. 2008); *United States v. Hurwitz*, 459 F.3d 463, 475 (4th Cir.

2006); *United States v. King*, 587 F.2d 956 (9th Cir. 1978).   Some circuits have treated legitimate medical purpose as a defense, and not an essential element of a § 841 charge.   *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc); *United States v. Polan*, 970 F.2d 1280, 1282 (3d Cir. 1992); *United States v. Seelig*, 622 F.2d 207, 211-12 (6th Cir. 1980); *United States v. Roya*, 574 F.2d 386 (7th Cir. 1978).

Consequently, the usual focus of these prosecutions is a showing that the defendant acted outside "the usual course of professional practice," and not "for a legitimate medical purpose."

The DEA regulations also refer to the aforementioned key phrases in title 21 C.F.R. § 1306.04, titled "Purpose of issue of prescription." Paragraph (a) provides in pertinent part:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.

Most of the Circuit Courts of Appeals have held that the

Government does not have to allege in the indictment that a medical professional acted outside the scope of professional practice or not for a legitimate medical purpose. Once the prosecution establishes that the practitioner was authorized to dispense controlled substances, the Government has the burden of proving that the charged conduct falls outside the professional practice of the defendant's particular medical profession.

Defendant physicians have contended that "outside the scope of professional practice" and "not for a legitimate medical purpose" are two separate legal standards that the government must prove, and that the standard is subjective rather than objective. *See United States v. Smith*, 573 F.3d 639 (8th Cir. 2009); *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). The courts, however, have recognized that the phrases are different enunciations of the same concept. *United States v. Rottschaefer*, 178 Fed. Appx. 145, 147-48 (3d Cir. 2006); *United States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993); *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1137 (4th Cir. 1994); *United States v. Singh*, 54 F.3d 1182, 1187-88 (4th Cir. 1995); *United States v.*

*Plesons*, 560 F.2d 890, 896 (8th Cir. 1977).   In *United States v. Norris*, 780 F.2d 1207 (5th Cir. 1986), the defendant doctor argued that the jury should have been instructed that the usual course of professional practice was to be judged from a subjective, not an objective, standard. *Id.* at 1209.   The Fifth Circuit, however, ruled that the district court properly directed the jury to consider, "from an objective standpoint whether the drugs were dispensed in the usual course of professional practice." *Id.*   The *Norris* ruling follows the Supreme Court ruling in *Moore*, where the Court implicitly approved the following instruction given by the trial court:

> [You must find] beyond a reasonable doubt that a physician who knowingly or intentionally, did distribute [controlled substances] by prescription, did so other than in good faith for detoxification in the usual course of professional practice and in accordance with the standard of medical practice generally recognized and accepted in the United States.

423 U.S. at 136; *see Norris*, 780 F.2d at 1209; *see also United States v. Hurwitz*, 459 F.3d 463, 476-77 (4th Cir. 2006), *United States v. Vamos*, 797 F.2d 1146, 1151 (2d Cir. 1986).   In *Moore*, the Supreme Court approved a national standard of care. 423 U.S. at 136; *Merrill*, 513 F.3d at 1306; *United States v. Feingold*, 454 F.3d 1001, 1009-10 (9th Cir.

2006).

There are many cases that discuss the meaning of the phrases "outside the scope of professional practice" and "not for a legitimate medical purpose."   However, it is not a one-size-fits- all analysis.   *See United States v. Hitzig*, 63 Fed. Appx. 83, 86 (4th Cir. 2006) ("case-by-case analysis" required).   As the Sixth Circuit stated in the case of a podiatrist prosecuted for possessing with intent to distribute cough syrup, "[t]here are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice. [citation omitted].   Rather, the courts must engage in a case-by-case analysis of evidence to determine whether a reasonable inference of guilt may be drawn from specific facts." *United States v. August*, 984 F.2d 705, 713 (6th Cir. 1992).

There is no definition in the law or regulations of the term "professional practice"; however, case law has provided guidance in this area.   "The term 'professional practice' refers to generally accepted medical practice; a practitioner is not free deliberately to disregard prevailing standards of treatment." *United States v. Vamos*, 797 F.2d

13

1146, 1151 (2d Cir. 1986). However, the term requires more than the medical malpractice standard. *See United States v. McIver*, 470 F.3d 550, 560 (4th Cir. 2006) (good faith instruction critical to distinguish standard for criminal liability from that for medical malpractice); *Feingold*, 454 F.3d at 1008-09. It requires, "proof beyond a reasonable doubt that the doctor was acting outside the bounds of professional medical practice, as his authority to prescribe controlled substances was being used not for treatment of a patient, but for ... other than a legitimate medical purpose, *i.e.*, the personal profit of the physician." *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1137 (4th Cir. 1994); *see also United States v. Alerre*, 430 F.3d 681, 638 (4th Cir. 2005). Some Circuits, however, have found that failure to comply with standard of care alone insufficient to establish that the defendant acted outside the scope of professional practice. *See United States v. Wexler*, 522 F.3d 194 (2d Cir. 2008); *Feingold*, 454 F.3d at 1008-1009.

Although many cases report that physicians and pharmacists distributed controlled substances in exchange for large sums of money, sexual favors, or other unsavory purposes, that is not always the case.

14

A "malicious motive" such as greed or carnal gratification is not

required to convict a practitioner under 21 U.S.C. § 841(a)(1).   *United*

*States v. Singh*, 54 F.3d 1182, 1188 (4th Cir. 1995).   The conduct of the

medical professional varies from case- to-case, but often falls in one or

more of the categories described in *United States v. Rosen*, 582 F.2d

1032, 1035 (5th Cir. 1978).   For example, in *United States v. Johnson*,

71 F.3d 539 (6th Cir. 1995), the appellate court found sufficient

evidence that the physician and others associated with the clinic

distributed prescriptions "outside the scope of professional practice.":

> Government's evidence included (1) a police audiotape and
> testimony from former "patients," indicating that defendant
> prescribed narcotics upon request and without medical
> examinations; (2) testimony that defendant, in fear of
> prosecution, took precautions in prescribing narcotics; (3)
> testimony that the Clinic was a "hang-out" for "patients"
> where they would discuss the narcotics they were going to
> receive and trade narcotics among themselves; and (4)
> testimony that defendant would exchange prescriptions with
> "patients" for construction work on his property.

*Johnson*, 71 F.3d at 542-43.

In this case, the defendant claims that neither § 841(a)(1) nor 21

C.F.R. § 1306.04(a) apprises a physician, such as himself, that he may

be prosecuted, "for prescribing controlled substances to treat a patient

in pain if the patient has a history of substance abuse disorder." (Doc. 68, p. 6). The defendant, however, knows full well that a valid prescription is the only mechanism through which he is lawfully permitted to prescribe controlled substances. The defendant knows full well that for a prescription to be valid, it must be written in the usual course of professional practice and for a legitimate medical purpose. The defendant also knows that these drugs are controlled for a reason. These drugs are potentially dangerous controlled substances if prescribed to any patient, even more so if the patient is a drug addict or suffering from a history of substance abuse disorder. The defendant cannot credibly argue that if he has gasoline in one hand and a lit match in the other, he does not know that if he brings the two together - something bad is very likely to happen.

Thus, the factual basis of the defendant's legal theory, that K.D. was a drug addict in pain and that he had no duty to protect her from herself, is built on a foundation of sand that collapses even after superficial scrutiny. The defendant had a duty to care about K.D.'s drug addiction and to not add fuel to that addiction.

The evidence in this case will prove that the defendant's prescriptions written for K.D. within 48 hours of her death were outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1).

### b.   *The Controlled Substances Act Is Not Unconstitutionally Vague As Applied To Medical Professionals*

The defendant contends that the Controlled Substances Act is unconstitutionally vague as applied to medical professionals. Courts have rejected this argument.   *See United States v. DeBoer*, 966 F.2d 1066, 1068-69 (6th Cir. 1992); *United States v. Collier*, 478 F.2d 268, 271-72 (5th Cir. 1973).   The Supreme Court has affirmed the application of the Controlled Substances Act to physicians.   *See Gonzalez v. Oregon*, 546 U.S. 243, 274 (2006).   Many other circuit courts have addressed this issue:

*     *See, e.g.*, *United States v. McKay*, 715 F.3d 807, 824 (10th Cir. 2013) (finding the CSA is not unconstitutionally vague as applied to a pain management doctor); *United States v. Deboer*, 966 F.2d 1066, 1068–69 (6th Cir. 1992) (denying a void-for-vagueness challenge to the CSA because a pharmacist's responsibilities giving rise to unlawful

conduct was "clearly defined"); *United States v. Roya*, 574 F.2d 386, 390–91 (7th Cir. 1978) (rejecting an argument suggesting the CSA was unconstitutionally vague as applied to a defendant-physician); *United States v. Gerlay*, 2009 WL 4897748, at *7 (D. Alaska Dec. 11, 2009) (finding the CSA "is not void-for-vagueness neither facially nor as applied" to a pain doctor); *United States v. Birbragher*, 576 F. Supp. 2d 1000, 1012–13 (N.D. Iowa 2008) (finding the CSA provides adequate notice of the proscribed conduct for physicians), *affirmed*, 603 F.3d 530 (8th Cir. 2010); *United States v. Prejean*, 429 F. Supp. 2d 782, 805 (E.D. La. 2006) (holding the phrases "legitimate medical purpose" and "professional practice" are not unconstitutionally vague).

\*  *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d. Cir. 1992) (*citing United States v. Powell*, 423 U.S 87, 94, 96 S.Ct. 316, 321, 46 L.Ed.2d 228 (1975)) (The fact that Congress might, without difficulty, have chosen a clearer and more precise language, equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague).

c.     Regulations Promulgated Pursuant to the CSA are not
       Unconstitutionally Vague as Applied to Medical
       Practitioners

The defendant also challenges 21 C.F.R. § 1306.04, claiming that

the regulation is unconstitutionally vague as applied to him.   The

Seventh Circuit has held that "the challenged regulation has been

validly enacted and does not expand the criminal statute."   *United*

*States v. Green*, 511 F.2d 1062, 1069 (7th Cir. 1975).   *See also United*

*States v. Smith*, 573 F.3d 639 (8th Cir. 2009).   DEA regulations have

the force and effect of law.   *United States v. Seelig*, 622 F.2d 207, 210-

11 (6th Cir. 1980).

The regulation is not vague and ambiguous, and has been applied

and upheld in other circuits as follows:

i.     With regards to the phrase "usual course of practice": *United*

*States v. Rosenberg*, 515 F.2d 190, 198 (holding that the phrase "in the

course of professional practice" within provision of Controlled Substance

Act defining a practitioner authorized to prescribe controlled substances

was not so vague as to deny due process); *United States v. Collier*, 478

F.2d 268, 271 (5th Cir. 1973) (holding that courts have interpreted this

language easily since its inception, and this is convincing that it is not vague).

ii.     With regards to the phrase "legitimate medical purpose": *United States v. Boettjer*, 569 F.2d 1078, 1080 (9th Cir. 1978) (prescriptions not issued for legitimate medical purpose by practitioner acting in usual course of his professional practice, if knowingly or intentionally issued, may form predicate for practitioner's criminal liability).

iii.     *United States v. Robinson*, 253 F.Supp.3d 1, 3 (D.C. Cir. 2017) (statute prohibiting health care professionals from distributing or dispensing a controlled substance other than "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice" was not unconstitutionally vague).

iv.     *United States v. Birbragher*, 576 F.Supp.2d 1000, 1016 (N.D. Io. 2008) (objective, rather than subjective standard applied to determine whether physician violated regulation providing that for a prescription to be effective it must have been issued for a legitimate medical purpose and in the usual course of professional practice).

20

v.    *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (to

convict a prescribing physician under section of the Controlled

Substances Act prohibiting distribution of controlled substance, the

government must prove that the physician knowingly prescribed a

controlled substance outside the usual course of professional medical

practice and without a legitimate medical purpose).

The Government respectfully requests that the Court deny the

defendant's motion to dismiss the indictment based on a theory of

unconstitutional vagueness.

## III.    Motion to Dismiss – Insufficiency of Indictment

### a.    *The Indictment Complies with the Requirements of Rule 7*

The defendant also claims that the indictment is insufficient

because it fails to, "fully, directly, and expressly, without any

uncertainly or ambiguity, set forth all of the elements necessary to

constitute the offense intended to be punished."   (Doc. 68, p. 8).

The Third Circuit has set forth the requirements of a well-pleaded

indictment as follows:

> Federal Rule of Criminal Procedure 7(c)(1) requires an indictment
> to "be a plain, concise, and definite written statement of the

essential facts constituting the offense charged."   The Supreme
Court has explained that, "[T]he Federal Rules were designed to
eliminate technicalities in criminal pleadings and are to be
construed to secure simplicity in procedure." *United States v.
Resendiz-Ponce*, 549 U.S. 102,110 (2007).   "While detailed
allegations might well have been required under common-law
pleading rules, they surely are not contemplated by Rule 7(c)(1 )."
*Id.* (citations omitted) (quoting *United States v. Oebrow,* 346 U.S.
374, 376 (1953)).

*United States v. Bergrin,* 650 F.3d 257, 264 (3d Cir. 2011) (internal

alterations omitted).   Accordingly:

> An indictment is sufficient so long as it "(1) contains the elements
> of the offense intended to be charged, (2) sufficiently apprises the
> defendant of what he must be prepared to meet, and (3) allows the
> defendant to show with accuracy to what extent he may plead a
> former acquittal or conviction in the event of a subsequent
> prosecution." *United States v. Vitillo,* 490 F.3d 314 (3d Cir. 2007)
> (internal quotation marks omitted).   Moreover, "no greater
> specificity than the statutory language is required so long as there
> is sufficient factual orientation to permit the defendant to prepare
> his defense and to invoke double jeopardy in the event of a
> subsequent prosecution."   *United States V. Rankin,* 870 F.2d 109,
> 112 (3d Cir. 1989).

*Id.* (quoting *United States v. Kemp,* 500 F.3d 257, 280 (3d Cir. 2007))

(internal alterations omitted).   The Third Circuit has moreover

"recognized that 'an indictment must allege more than just the essential

elements of the offense.'" *United States V. John-Baptiste,* 747 F.3d

186,196 (3d Cir. 2014) (quoting *Vitillo,* 490 F.3d at 321) (internal alterations omitted).   "However, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy.'" *Id.* (quoting *United States v. Huet,* 665 F.3d 588, 595 (3d Cir. 2012)) (internal alterations omitted).

A review of the indictment in this case shows that the charging language fully complies with these requirements, and even does far more than is required, laying out some of the foundational backdrop to the charges to provide context for the charges the defendant must be prepared to meet.   Still, the defendant claims that the 8-page indictment, charging two counts of unlawful distribution of a controlled substance, is insufficient.   He is wrong.

A charging document satisfies this standard if it sets forth the elements of each offense charged, cites the statutes that are violated, and generally identifies the time and place of the defendant's conduct that allegedly violated the statute. *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978).   This is true because a defendant has a

constitutional right to know only the offenses with which he is charged, not "the details of how it will be proved."   *United States v. Kendall*, 665 F.2d at 135; *United States v. Richardson*, 130 F.3d 765, 776 (7th Cir. 1997); *United States v. Balogun*, 971 F. Supp. 1215, 1227 (N.D. Ill. 1997).

This Court should find that the two-count indictment is in accordance with the charging standards discussed above.   The indictment plainly and specifically describes not only the crimes charged, but also provides explanation of the Controlled Substance Act; an explanation for the scheduling of controlled substances; the particular schedule of controlled substances at issue in the offenses charged; the nature of the controlled substances at issue in the offenses charged; the inherent risks/dangers of the controlled substances at issue in the offenses charged; provides legal definitions and sections of the law where the definitions are found; sources of authority for the law at issue; sources of Pennsylvania law directing the conduct of physicians licensed in the Commonwealth of Pennsylvania; the legal standard by which physicians are authorized to prescribed controlled

substances; the legal mechanism by which a physician may legitimately prescribe a controlled substance; the time period for which the defendant is alleged to have committed the offenses; the specific patient for whom the defendant is alleged to have prescribed controlled substances, resulting in death; the particular controlled substances the defendant is alleged to have unlawfully prescribed resulting in death; and the particular dates the defendant is alleged to have prescribed the controlled substances for K.D. resulting in her death.

Most importantly, the indictment specifically contains the elements of the offense charged, *i.e.*, (1) the defendant knowingly and intentionally; (2) distributed and dispensed; (3) a controlled substance; (4) outside the usual course of professional practice and not for legitimate medical purposes; (5) and serious bodily injury and death resulted.

Not only does the indictment in this case lay out the elements of the offenses charged, it also provides "sufficient factual orientation" to allow the defendant to prepare his defense and invoke double jeopardy. The indictment plainly and specifically complies with Federal Rule

7(c)(1).   To hold otherwise would be to elevate procedural technicalities over the simplicity envisioned by the rules and reaffirmed by Third Circuit precedent.[3]

In addition, it is noted that the Government has provided the defendant with discovery.   The Government has provided the defendant with a copy of all records originally retrieved as a result of a search warrant executed on August 6, 2019, two expert reports, the autopsy, toxicology, and coroner's report, prescription drug monitoring data for K.D., and the lengthy affidavit in support of probable cause for a search warrant.   This is more than the Government is required to disclose at present.   The Government will continue to supplement its discovery obligations.

---

[3]   It may be that defense counsel is confused since the crime charged is a violation of 21 U.S.C. § 841(a)(1), the crime of illegal distribution of narcotics.   The crime charged is not specifically designated as "illegal prescribing."   When the crime of illegal distribution of narcotics is charged against a physician – which can occur through the vehicle of prescribing, it is appropriate to charge that the knowing and intentional distribution was outside the usual course of professional practice and not for a legitimate medical purpose.

IV.  <u>Conclusion</u>

In light of the above, the Government respectfully requests that the Court deny the defendant's motion to dismiss the indictment.

Respectfully submitted,

DAVID J. FREED
United States Attorney


By:  <u>/s/ Michelle L. Olshefski</u>
MICHELLE L. OLSHEFSKI
Date:   November 4, 2020          Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:CR-19-250 |
| | : | |
| v. | : | (JUDGE MARIANI) |
| | : | |
| MARTIN EVERS, | : | Electronically filed |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of November, 2020, I caused the foregoing response to be filed via ECF and that counsel of record for the defendant is a filing user under the ECF system to include the following:

Patrick Casey, Esquire

/s/ Michelle L. Olshefski
Michelle L. Olshefski
Assistant U.S. Attorney