# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CRIMINAL NO. 3:19-CR-250 |
| v. | : (JUDGE MARIANI) |
| | : |
| MARTIN EVERS, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers Defendant's Motion to Preclude Any Witnesses from Testifying as to Ultimate Legal Conclusions or Legal Standards Governing Case (Doc. 55). In the underlying case, Defendant is charged in the August 28, 2019, two-count Indictment with Unlawful Distribution and Dispensing of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and Unlawful Distribution and Dispensing of a Controlled Substance Resulting in Death and Serious Bodily Injury in violation of 21 U.S.C. § 841(a)(1). (Doc. 1.) These charges against Defendant, a medical doctor, are based on September 2, 2014, and September 9, 2014, prescriptions for controlled substances written for his patient "K.D.," a woman with an opioid addiction whom he had begun to treat in March 2013. (*Id.*) For the reasons discussed below, the Court will deny Defendant's motion.

### II. ANALYSIS

In his motion, Defendant maintains that

> [t]he Government should be precluded from eliciting testimony from any witness on the ultimate legal issue or the legal standards or governing law of the case, including, but not limited to eliciting testimony from any witness regarding whether any prescription issued by Dr. Evers was for a legitimate legal purpose or within the usual course of professional conduct.

(Doc. 55 ¶ 16.) In his supporting brief, Defendant focuses his argument on the proposed testimony of the Government's expert, Dr. Stephen Thomas, asserting that his Report includes impermissible opinions regarding the ultimate legal conclusion and legal standards governing the case. (Doc. 66 at 2, 5.) Because Dr. Thomas's opinion and testimony are the subject of a separate motion (Doc. 54) which will be addressed independently, the Court will herein address only Defendant's general claim that any expert witness should be precluded from testifying as to "the ultimate legal issue or the legal standards or governing law of the case, including . . . whether any prescription issued by Dr. Evers was for a legitimate legal purpose or within the usual course of professional conduct." (Doc. 55 ¶ 16).[1]

The legal issues and standards governing this case are based on Defendant's alleged violations of 21 U.S.C. § 841(a)(1) and 21 C.F.R. § 1306.4. (*See* Doc. 1.) 21 U.S.C. § 841(a)(1) provides as follows:

**(a) Unlawful acts**

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

---

[1] Both parties incorporate briefs filed in conjunction with Defendant's Motion to Exclude Opinion and Testimony of Dr. Stephen Thomas (Doc. 54) into briefs filed with the motion under consideration. (*See* Doc. 92 at 2 (citing Doc. 84); Doc. 107 at 1 (referencing Doc. 108).) Because the Local Rules of Court of the Middle District of Pennsylvania provide that "[n]o brief may incorporate by reference all or any portion of any other brief," L.R. 7.8, the Court will not consider the parties' briefs incorporated by reference.

> **(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]

21 U.S.C. § 841(a)(1). 21 C.F.R. § 1306.04 addresses the "[p]urpose of issue of prescription":

> [a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04(a).

Federal Rule of Evidence 704 addresses Opinion on an Ultimate Issue:

> **(a) In General--Not Automatically Objectionable.** An opinion is not objectionable just because it embraces an ultimate issue.
>
> **(b) Exception.** In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704.

The parties do not dispute that an expert may testify on an ultimate issue. (Doc. 66 at 4; Doc. 92 at 2.) Defendant focuses on the prohibition against expert testimony "'as to the law governing the case.'" (Doc. 66 at 4 (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)).) Although the Government states that Plaintiff's reliance on

3

civil case law is inappropriate because this is a criminal case (Doc. 91 at 2), the principle set out in *Berckeley* was grounded in part on a criminal case, *United States v. Leo*, 941 F.2d 181 (3d Cir. 1991), *see* 455 F.3d at 217-18, and continues to be applied in criminal cases considered by our Circuit Court, *see, e.g., United States v. Ludwikowski*, 944 F.3d 123, 137 (3d Cir. 2019). Thus, an expert may testify on an ultimate issue but

> the District Court must ensure that an expert does not testify as to the governing law of the case. Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that "embraces an ultimate issue to be decided by the trier of fact," an expert witness is prohibited from rendering a legal opinion. *United States v. Leo,* 941 F.2d 181, 195–96 (3d Cir.1991). Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury. *First National State Bank v. Reliance Elec. Co.,* 668 F.2d 725, 731 (3d Cir.1981) (per curiam).

455 F.3d at 217.

Certain settled principles are relevant to the question of admissibility raised by Defendant's motion. As succinctly summarized in *United States v. Price*, 458 F.3d 202 (3d Cir. 2006), "[i]t is settled law that an expert may testify about common behavior patterns in a profession or subculture." *Id.* at 212. The Third Circuit has also recognized that qualified experts may testify about not only business customs and practices but also applicable legal duties that did not concern governing law. *See United States v. Fumo*, 655 F.3d 288, 302-03 (3d Cir. 2011). However, these principles do not point to a bright line between admissible and inadmissible expert testimony.

Whether in the context of the prohibition against testimony as to the governing law of the case or Rule 704(b)'s specific prohibition of expert testimony regarding the defendant's

4

state of mind, cases addressing the issue of permissible and impermissible testimony consistently note the fine line between the two. See, e.g., *Berckeley*, 455 F.3d at 218; *United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005). In *Berckeley*, the Third Circuit stated that the "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." 455 F.3d at 218. *Berckeley* then cited *Leo* as an example of a case where the district court was found to have properly admitted testimony as to the custom and practices of the industry at issue when the expert "did not give his opinion as to what was required under the law, or whether the defendant complied with the [law he was accused of violating]." *Id.*

In evaluating this fine line in a criminal case where Rule 404(b) was at issue, the Third Circuit stated that

> [e]xpert testimony is admissible if it merely "support[s] an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir.1998) (quoting *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir.1997)). "It is only as to the last step in the inferential process-a conclusion as to the defendant's mental state-that Rule 704(b) commands the expert to be silent." *United States v. Dunn*, 846 F.2d 761, 762 (D.C.Cir.1988).

*United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001).

Although the Third Circuit has not addressed a factual scenario similar to that considered here, the Seventh Circuit did so in *United States v. Kohli*, 847 F.3d 483 (7th Cir.

2017), albeit in a different procedural context. After the defendant, a physician specializing in pain management, was convicted on multiple counts of prescribing narcotics without a legitimate medical purpose in violation of 21 U.S.C. § 841(a), on appeal he challenged several of the district court's evidentiary rulings at trial. *Id.* at 486. Before trial, Dr. Theodore Parran, an addiction specialist and internal medicine physician, reviewed Dr. Kohli's patient files for each of the patients who had received the allegedly unlawful prescriptions charged in the indictment. Dr. Parran did not dispute that these patients suffered from legitimate, painful medical conditions that might ordinarily warrant treatment with narcotics. *Id.* However, Dr. Parran explained to the jury that Dr. Kohli's files reflected that he prescribed narcotics to these patients under circumstances that were far from ordinary. *Id.* Ultimately, based on his review of the relevant patient files, Dr. Parran concluded that the prescriptions identified in the indictment were inconsistent with the usual course of professional practice and lacked a legitimate medical purpose. *Id.*

Analyzing whether the trial court properly admitted the testimony under Rule 704, the Circuit Court found that Dr. Parran's

> testimony tracks the elements necessary to sustain a conviction for illegal dispensation, *see* 21 C.F.R. § 1306.04(a), and it therefore embodies an opinion about ultimate or dispositive issues in the case. Such opinions are expressly allowed, however, under Rule 704(a). Likewise, consistent with Rule 704(b), Dr. Parran offered no opinion about Dr. Kohli's subjective mental state when he wrote the prescriptions at issue, or about whether Dr. Kohli had the requisite intent to be convicted of the crimes charged. Dr. Parran did not rely on "'some special knowledge of [Dr. Kohli's] mental processes,'" but clearly and properly based his expert opinion on a review of Dr. Kohli's office records in light of his

own experience and training. *See United States v. Winbush*, 580 F.3d 503, 512 (7th Cir. 2009).

847 F.3d at 491. Regarding the defendant's argument that Dr. Parran exceeded his role as a medical expert witness by instructing the jury on the applicable legal standard, the Court stated

> [i]t is true that Dr. Parran's testimony touched on the applicable standard of care among medical professionals—a standard that is no doubt closely linked to § 841(a)'s prohibition on prescribing outside the "usual course of professional medical practice." But testimony on the standard of care is not converted into an impermissible jury instruction on the governing legal standard just because the two standards overlap. If that were the case, physicians could virtually never offer meaningful expert opinions in prosecutions under § 841(a). *See United States v. Chube II*, 538 F.3d 693, 698 (7th Cir. 2008) (recognizing that "it is impossible sensibly to discuss the question whether a physician was acting outside the usual course of professional practice and without a legitimate medical purpose without mentioning the usual standard of care"). Dr. Parran did not lecture the jury about the legal meaning or application of § 841(a), but simply opined that certain of Dr. Kohli's actions were medically unjustified and contrary to standard professional medical practice. That opinion was within Dr. Parran's area of expertise and was not inappropriate under Rule 704 or otherwise.

847 F.3d at 492. Accordingly, the Circuit Court concluded that the District Court did not abuse its discretion in admitting Dr. Parran's expert testimony. *Id.*

In *Chube II*, the Seventh Circuit had to determine "whether, in opining that the [defendant doctors] wrote prescriptions with no legitimate medical purpose, the experts in th[e] case crossed the line established by Rule 704(b)." 538 F.3d at 700. The Circuit Court agreed with the government that neither of the testifying experts ever claimed to know the doctors' intent, and so the opinions that they offered were not barred by Rule 704(b): while

7

an expert "stated his opinion that no legitimate medical purpose justified the prescriptions in the files he reviewed, he repeatedly cautioned that he was looking only at the files and that he had never had any contact with either the patients or the Doctors." *Id.* Likewise, in a 21 U.S.C. § 841(a) prosecution of a physician, the Eighth Circuit in *United States v. Katz*, 445 F.3d 1023 (8th Cir. 2006), concluded that an expert's testimony that the prescriptions written for certain patients "did not appear to have been for a legitimate medical purpose" was properly admitted. 445 F.3d at 1031-32.

From this body of caselaw, it is abundantly clear that questions of admissibility similar to those at issue here are context driven. Given the subject matter and circumstances of this case, the Court cannot now, in a vacuum, provide an opinion as to whether expert testimony may be admitted regarding the propriety of prescriptions issued by Defendant or make a pronouncement about other legal standards governing the case which have not been specifically identified. Beyond the general framework set out above, the Court will not give a definitive ruling on any prospective witness testimony.[2] As noted by the

---

[2] Notwithstanding this determination, the Court notes that, because the law governing the case includes a mens rea component, the Court will assiduously enforce Rule 704(b)'s prohibition against an expert witness offering an opinion about whether the defendant did or did not have a mental state that constitutes an element of the crime charged. In doing so, the Court will adhere to the Third Circuit's guidance in *Watson* that

> Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea. Rule 704 prohibits testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.

*Watson*, 260 F.3d at 309 (internal quotation marks and citations omitted).

8

Government, the motion under consideration here is "preemptive in nature." (Doc. 92 at 7.) The circumstances under which testimony is properly admitted or excluded can only be delineated on a case by case basis and, most often, the decision can only be made in the course of trial.[3]

### III. CONCLUSION

For the reasons discussed above, Defendant's Motion to Preclude Any Witnesses from Testifying as to Ultimate Legal Conclusions or Legal Standards Governing Case (Doc. 55) will be denied. A separate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[3] As noted in the text, see supra p.2, the Court will independently consider Defendant's arguments as to the admissibility of Dr. Thomas's opinion and testimony in the context of the Motion to Exclude Opinion and Testimony of Dr. Stephen Thomas (Doc. 54) which is not yet ripe for disposition (see Doc. 132). Dr. Thomas is thus far the only identified expert although the Government states the pathologist and toxicologist who authored the autopsy and toxicology reports "will certainly testify as experts in their respective fields consistent with each one's authored report, and will be offered as expert witnesses in advance of trial" but these opinions will not "embrace the ultimate issue in the case." (Doc. 82 at 7-8.)