UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:19-CR-00250 |
| | : | |
| v. | : | (JUDGE MARIANI) |
| | : | |
| MARTIN EVERS, | : | Electronically filed |
| Defendant | : | |

GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS

I.   Introduction

The Government hereby respectfully submits this supplemental
brief in opposition to defendant's motion to suppress the search and
seizure of electronic evidence, *i.e.,* patient files.   (Doc. 57).   The
Government incorporates herein the factual and procedural history,
legal principles, arguments, and attachments included in its initial brief
in opposition to defendant's motion to suppress.   (Doc. 83).   The
defendant's motion and for *Franks* hearing has no merit and should be
denied without a hearing.   As detailed in the Government's initial brief
in opposition to defendant's motion to suppress, first and foremost, the
defendant lacks standing to challenge the search and seizure of the
records seized, and second, a neutral and detached United States

1

Magistrate Judge, Karoline Mehalchick, determined that the search warrant for patient files owned and controlled by Bon Secours Charity Health System (BSCHS) Medical Group, P.C. was supported by ample probable cause.   The defendant has proffered nothing more than patient statements regarding their own satisfaction with type, quantity, and combination of controlled substances prescribed to them by the defendant over extensive periods of time.   The defendant's so-called evidence in this regard is irrelevant and unpersuasive in the context of a physician unlawfully prescribing opioids and other dangerous combinations of drugs, resulting in death.   It is akin to asking an addict if they are happy with their drug source.   In this context, the question is not whether the patients were pleased with the defendant's care.   The question is whether the extraordinary amounts of controlled substances prescribed by the defendant to a select number of patients was lawful, that is, whether they were prescribed within the usual course of professional practice for legitimate medical purposes.   Law enforcement officers do not go to patients to answer these questions. Law enforcement develops probable cause, which is simply a more likely

than not standard, to secure records in order to have them objectively reviewed by physicians with special knowledge and expertise in the particular discipline.   The standard of care in this criminal context does not and cannot cater to the idiosyncrasies of particular patients, physicians, or lawyers.   A *Franks* hearing is unwarranted and the defendant's Motion should be denied.

## II.   Defendant Has Not Established Standing

The Government incorporates in its entirety the portion of its initial brief in opposition to defendant's motion to suppress, including all exhibits related thereto, in support of the fact that the defendant does not have standing to move to suppress the patient files seized from the electronic cloud of his employer, Bon Secours Charity Health Systems (BSCHS) Medical Group, P.C.[1]   The defendant has conflated a

---

[1]   Reference is made to Government Exhibits 1 – 3 (Doc. 83, Exhibits - Filed Under Seal).   The defendant did not own or control the premises where he worked.   The same was leased and controlled by the defendant's employer, BSCHS Medical Group, PC.   The defendant, in his employment capacity, was merely provided access to patient medical records by his employer and only pursuant to a "Physician Employment Agreement," addressed fully in Document 83.   The defendant, in his employment capacity, was merely provided access to the medical office in order to carry out his employment duties.   Moreover, the medical records over which the defendant claims he enjoyed a right to privacy

patient's privacy rights in medical records with what he argues is a violation of his own Fourth Amendment rights and his own expectation of privacy in patient files.   He is wrong.   "Fourth Amendment rights are personal rights which, like other constitutional rights, may not be vicariously asserted."   *Rakas v. Illinois*, 439 U.S. 128, 133 (1978).   The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.   *Id.*   *See also United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (a [defendant] must show both that he had a subjective expectation of privacy in the area searched and that his expectation was objectively reasonable.").[2]

---

were not even exclusively accessed by him, as any other physician employed by the BSCHS Medical Group, or working within the Bon Secours Hospital System and treating the same patient, was able to access that patient's medical record.   *Id.*, *Exhibit* 3.   Even the laptop computer used by the defendant at his employer's premises was owned and controlled by his employer.   *Id.*   The defendant does not dispute any of these facts.   As the Supreme Court has noted, "there comes a point when use of an area is shared with so many that one simply cannot reasonably" have an expectation of privacy."   *Rakas v. Illinois*, 439 U.S. 128, 146 (1978).

[2]   Even those who are "legitimately on [a third person's] premises" which is subjected to a search cannot challenge the search unless they can demonstrate a reasonable expectation of privacy in the

In his initial brief in support of his motion to suppress, the defendant offered no evidence to establish standing to contest the warrant at all.  (Doc. 57).  Nor has the defendant ever claimed to have ownership and/or exclusive control over the patient files seized from his employer because he knows he does not enjoy those interests. However, in his reply brief to the Government's initial brief in opposition to the defendant's motion to suppress, the defendant contends that **he** enjoyed a reasonable expectation of privacy in the patient files because he claims he was charged with protecting the privacy rights of the patients. (Doc. 110).  He makes this claim, as he must to prevail, without ever contending that he was the owner of the patient files in question, or that he exercised exclusive control over the patient files in question,[3] and without disputing that his employer only

---

premises.  *Rakas*, 439 U.S. at 141-49.  One who is merely on [a third person's] premises with permission of the occupant to participate in drug transactions does not enjoy a reasonable expectation of privacy in the premises.  *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998).

[3]    The U.S. Supreme Court has "consistently held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties" because that person "assume[s] the risk" that the third party will convey the information to the police.  *Smith v. Maryland*, 442 U.S. 735, 734-35 (1979).  This case is actually more

provided him "reasonable access" to the patient files to enable him to do

the job he was hired to do.   It is in this way that the defendant

conflates patient privacy rights **possessed by the patient** with his own

Fourth Amendment rights, which he does not possess in these

circumstances.   Privacy in medical information belongs to the patient.

The Health Insurance Portability and Accountability Act (HIPAA),

42 U.S.C. § 1320(d), is the primary federal law which was passed to

ensure an individual's right to privacy over medical records. *United*

*States v. Zamora,* 408 F.Supp.2d 295, 298 (S.D.Texas 2006).   It governs

the confidentiality of medical records and regulates how and under

what circumstances "covered entities" may use or disclose "protected

health information" about an individual.   The term "covered entities" is

---

than BSCHS Medical Group, P.C. simply acting as a third party
consenting to a search of records over which it had common authority.
BSCHS has **total** authority.   Accordingly, when the defendant
knowingly and voluntarily entered into the employment agreement
with BSCHS Medical Group, P.C., as described and detailed in the
Government's initial brief in opposition, he assumed the risk that the
corporation would reveal to the police, upon demand, the electronic
medical records.   He knowingly entered into the employment
agreement with BSCHS Medical Group, P.C. because it was in his
financial interest to do so.   He should not be permitted now to pretend
that the employment agreement did not and does not exist.

defined to include health care plans, health care clearing houses and health care providers. 45 CFR §§ 160.102, 164.104. "Protected health information" includes all individually identifiable health information maintained or transmitted in any form, as well as any oral statement made about medical treatment or conditions. 45 CFR § 160.103. Generally, HIPAA prohibits the use and disclosure of an individual's protected health information unless the individual has authorized its use and disclosure. HIPAA provides, however, that a "covered entity" may use or disclose protected health information without the written authorization of the individual or the opportunity for the individual to agree or object in certain limited circumstances. 45 CFR § 164.512. One of those exceptions is where a law enforcement official seeks protected health information for a law enforcement purpose. 45 CFR § 164.512(f). For example, in *United States v. Prentice*, 683 F. Supp. 2d 991, 1001-02 (D. Minn. 2010), the district court not only held that a "law enforcement agency is not a covered entity" under HIPAA, but also that, even if it was, any violation still would not "warrant the suppression of medical records" otherwise relevant to a prosecution

because HIPAA " 'was not intended to be a means for evading . . .

criminal proceedings.' "   Because a "covered entity" under HIPAA is

defined as one involved in a patient-medical provider relationship, 45

C.F.R. § 164.104 & 164.502, it has no applicability to law enforcement,

as multiple courts have concluded.   HIPAA restrains the health plan,

health care clearing house, or health care provider' from disclosing

protected medical information . . .[it] does not restrain law-enforcement.

*See United States v. Elliott*, 676 F. Supp. 2d 431, 439-40 (D. Md. 2009)

(law enforcement, "including the office of the prosecuting attorney," not

restricted by HIPAA); *United States v. Yazzie*, 998 F. Supp. 2d 1044,

1116 (D.N.M 2014) ("FBI is not . . . covered . . . under HIPAA"); *United*

*States v. Stapleton*, 2013 WL3935104, at *33 (E.D. Ky. 2013) ("[t]he

Government's conduct . . . not governed by . . . HIPAA"); *United States*

*v. Abdallah*, 2009 WL 1918401 at *6 (S.D. Tex. 2009) (same); *United*

*States v. Zamora*, *supra* at 298 (same).4   Case after case, rejecting

similar efforts to use HIPAA to stymie criminal prosecutions, has held

---

4       *See also, Commonwealth v. Williams*, 176 A.3d 298, 317 (Pa.
Super. 2017) (PA District Attorney's Office was not a "covered entity"
under Health Insurance Portability and Accountability Act (HIPAA).

that HIPAA does not apply to law enforcement.

Thus, the Government's conduct in executing a search warrant at the defendant's place of employment is not governed by the provisions of HIPAA, that is to say, even if BSCHS, the rightful holder of any Fourth Amendment right, attempted to suppress the records seized from its office, that effort would fail if the argument was made pursuant to patient privacy rights.   The defendant's attempt to hide behind a HIPAA-type argument likewise fails for the reasons stated above, and because he lacks standing to make such argument.

In sum, it is the patient's privacy rights that are protected under HIPAA, not the defendant's privacy rights; the defendant enjoys no privacy rights under HIPAA for which he can now conflate with a Fourth Amendment right to his own expectation of privacy.   The defendant simply enjoys no Fourth Amendment protection in records owned and controlled by his employer and seized from his employer. He enjoys no standing to object to the Government's search warrant. The defendant cannot exercise the Fourth Amendment rights of others, and his motion should be dismissed for this reason alone.

III. <u>Defendant Does Not Make the Requisite Showing to Warrant a</u>
<u>*Franks* Hearing</u>

Despite his lack of standing, the defendant maintains that the
affidavit of probable cause authorized by a neutral and detached
magistrate judge contained false statements and omissions that were
material to the magistrate judge's finding of probable cause.    In
particular, the defendant claims that the affiant was "reckless" by
failing to include various information and otherwise falsely asserting
information.   The defendant is wrong and argues his own
interpretation of facts not actual material omissions and/or false
statements.

The defendant does not satisfy the well-established standard to
require a hearing challenging the validity of an affidavit of probable
cause.   In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court
held that "a criminal defendant has the right to challenge the
truthfulness of factual statements made in an affidavit of probable
cause supporting a warrant subsequent to the *ex parte* issuance of the
warrant."   *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).
This procedure, now referred to as a *Franks* hearing, "allow[s] a

defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid." *Id*.   Critically, though, "the right to a *Franks* hearing is not absolute." *United States v. Pavulak*, 700 F.3d 651, 665 (3d Cir. 2012).   Rather, a defendant who seeks to suppress evidence on the ground that the affiant misstated facts in the probable cause affidavit bears a heavy burden. *Franks*, 438 U.S. at 155.   This defendant falls miles short of that burden.

First, the defendant must "make a 'substantial preliminary showing' that the affiant knowingly or recklessly included a false statement in or omitted facts from the affidavit." *Pavulak*, 700 F.3d at 665; *accord Franks*, 438 U.S. at 155-56.   "In order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf*, 461 F.3d at 383 n.8 (emphasis added).   Second, the defendant must "demonstrate that the false statements or omitted facts are 'necessary to the finding of probable cause.'" *Pavulak*, 700 F.3d at 665

11

(quoting *Yusuf*, 461 F.3d at 383-84).

When a defendant meets **both** factors, *Franks* requires a hearing in which the defendant must establish both prongs by a preponderance of the evidence in order to gain suppression.   *Franks*, 438 U.S. at 155-56 (emphasis added).   But, absent a substantial preliminary showing on **both** factors, a defendant is not entitled to a *Franks* hearing, much less suppression of the evidence.   *See Franks*, 438 U.S. at 155-56; *Yusuf*, 461 F.3d at 374 (emphasis added).   The defendant's claim that the affiant's alleged false statements or omissions were material to the finding of probable cause and were made with a reckless disregard for the truth is unsubstantiated and fails both *Franks* factors.

 a. **Defendant Has Failed to Offer Any Proof that the Affidavit Included Deliberate or Reckless Falsehoods or Intentionally Omitted Material Facts.**

First, the defendant's entire argument is willfully blind to the probable cause determination based on the totality of the circumstances actually included in the affidavit of probable cause, which requires courts to consider the cumulative weight of the information set forth by the affiant in connection with all reasonable inferences that the affiant

is permitted to make based upon the affiant's specialized training and experience.   *United States v. Arvizu*, 534 U.S. 266, 275 (2002).   The defendant wholly ignores the multiple deaths and the circumstances associated with those deaths, the multiple pharmacy reports and significance of those reports, and the magnitude of the PDMP data. The defendant argues that the court should focus on the fact that the patients he references liked him and were happy with all of the narcotics he provided to them every month.

The law is well settled in this area.   A judicial officer issuing a search warrant must "make a practical common-sense decision whether, given all the facts set forth in the affidavit....considering the totality of the circumstances.....there is a fair probability that contraband or evidence will be found in a particular place."   *Illinois v. Gates*, 462 U.S. 213, 238 (1983).   The probable cause determination is twofold: first, a judge must determine the "historical facts," that is, the events leading up to the search; second, a judge must decide whether these historical facts, viewed from the standpoint of a reasonable police officer," amount to probable cause. *Ornelas v. United States*, 517 U.S. 690, 695 (1996).

The Court of Appeals counsels that "[t]he supporting affidavit must be read in its entirety and in a common sense and nontechnical manner." *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir. 1993). "[S]tatements in an affidavit may not be read in isolation – the affidavit itself must be read as a whole." *Id*. at 1208.   Here, the affidavit of probable cause, as detailed in the Government initial brief in opposition, (Doc. 83), when viewed in its entirety, provided sufficient grounds for Magistrate Judge Mehalchick to issue the warrant; a decision subject to great deference.   *Ornelas*, 517 U.S. at 698-99; *Gates*, 462 U.S. at 236.   These facts, as detailed in the affidavit, are wholly disregarded by the defendant.

Instead, the defendant essentially argues that law enforcement had a duty and/or obligation to interview every witness for whom a patient file was sought and/or mentioned in the affidavit.   Then, according to the defendant, every statement made to law enforcement by the patient, no matter how irrelevant, should have been included in the affidavit, otherwise it was a reckless omission.   According to the defendant's argument, if a patient liked the defendant's prescribing

habits, then there was no reason to look at that patient file any further.

Likewise, if a patient reported certain medical conditions, then

regardless of the dosage and quantity of opioids and other narcotics the

patient was prescribed by the defendant, law enforcement should have

stopped there and simply taken the patient's word for the lawfulness of

the defendant's prescribing habits.   This is akin to asking a drug user

on the street whether they abuse drugs, whether they like their drug

dealer, and whether they are happy with how the drugs he/she sells to

them make them feel.   If they report they like their drugs and that

they are happy with whomever is providing them drugs, then the

officer's job is finished.   This is neither a logical nor persuasive

argument.   The defendant is charged with the same criminal violations

that street drug dealers are charged with every day.   The same

probable cause standard that applies to street dealers applies to the

defendant.   This is not to say that the defendant is a drug dealer but he

is certainly bound by his DEA registration which requires him to

prescribe controlled substances in the usual course of professional

practice for legitimate medical purpose.   If he prescribes outside those

parameters, he can be charged as a drug dealer.   The defendant,

however, seems to be under the impression that the probable cause

analysis is different for him or that the threshold for probable cause is

higher for him because he is a physician.   This surely is not the case.

The defendant's wrong impressions are exhibited in his

arguments.   For example, under the heading of "omissions," the

defendant argues that because the following statements were not

included in the affidavit, the affiant recklessly and intentionally

omitted material facts in reckless disregard for the truth:

- Where a patient (JB) reported that the defendant required a urinalysis "approximately every three months or more," took vital signs at medical appointments, and asked about her pain level. (Doc. 153 p. 12).   Yet, the defendant wholly ignores the inclusion in the affidavit of this patient's statement related to her difficulty withdrawing from the large quantities of narcotics prescribed to her by the defendant over a long period of time, and the fact that she found herself calling off from work because she was going through withdrawal symptoms after the defendant stopped prescribing opioids to patients upon learning of the DEA investigation.   (SW Affidavit ¶ 25).

- Where a patient (MA) reported that the defendant never asked her to do anything inappropriate. *Id.* at 8-9, 13.   The defendant goes on to claim that material information was intentionally omitted in reckless disregard for the truth regarding this patient. This is just not accurate.   Paragraph 29 of the affidavit includes most, if not all, of what the defendant claims was recklessly and

intentionally omitted *vis a vis* this patient.   Yet, the defendant wholly ignores that same patient's statement included in the affidavit about being a patient of the defendant's for 14 years and receiving multiple combinations of opioids in large dosages and quantities for 10 of those 14 years.   The defendant also ignores this patient's statement that she was never drug tested by the defendant until 2017 and then not again until January 2019. Additionally, this patient confirmed that the defendant continued to prescribe opioids to her during her pregnancy and that her child was born with a liver condition for which he remained in the hospital for 29 days after birth and for which he received treatment.   The defendant does not dispute the fact that a "liver condition" is consistent with opioid use during pregnancy.   The same is included in the affidavit.   (SW Affidavit ¶ 29).

- Where a patient (GH) reported that he was seeing the defendant "more frequent" due to certain health conditions. *Id.* at 12.   Yet, the defendant wholly ignores this patient's statements included in the affidavit that the defendant prescribed opioids to him to help him cope with the passing of a loved one (pain pills for depression?????); or that once the defendant cut his patients off from all opioids post initiation of a DEA investigation, this patient consulted with a psychiatrist who advised him that the defendant was treating him in an unethical way.   (SW Affidavit ¶ 27).

The defendant also references five patients for whom he claims only the PDMP data was included in the affidavit.   According to the defendant, since these patients reported general physical exams and details such as vital signs, checking of the ears, nose, and throat, pain levels, and these patient reported their own diagnoses, and the fact that these statements were not included in the affidavit, that means that the

affiant intentionally and recklessly omitted "material" statements in reckless disregard for the truth.   This is frivolous.   (Doc. 153 p. 14-22). The defendant actually argues that despite the totality of the circumstances included in the affidavit (which cannot be credibly argued as not seriously concerning), that somehow including minimal pain checks, vital signs taken, and self-reported diagnoses was somehow so "material" to the finding of probable cause that, first, the omission of such information rises to the level of intentional falsehoods and/or omissions in reckless disregard for the truth and, second, that had this information been included in the affidavit, the magistrate judge would not have authorized the search warrant because without this type of information, probable cause was lacking.   This is beyond frivolous.

As further indication of the defendant's willful blindness to the totality of circumstances included in the affidavit, the Government notes that the defendant references three patients who he alleges were interviewed but not referenced in the affidavit.   Those patients are identified by the defendant as AE, EE, and GD.   Presumably, the

defendant identifies these patients from Exhibit 7 (Patients Interviews Prior to the Search Warrant) attached to the Government's initial brief in opposition to the defendant's motion to suppress.   (Doc. 83).   The Government respectfully reminds the court of the fact that the Government seized only 69 patient files at a time when the defendant's patient volume was approximately 800 patients.   (Doc. 83 p. 8 n. 2). Probable cause existed for each patient file seized in this case, even if not specifically interviewed and even if non-material statements derived from interviews were not included in the affidavit.   It is noted, however, that patient files for AE, EE, and GD as referenced by the defendant were <u>not</u> seized nor were they identified for seizure.   The point is that the Government exercised discretion in identifying and seizing only patient files for which probable cause was established in the affidavit.

The affidavit in support of the search warrant authorized by the magistrate judge described various red flags that could be analyzed through the Prescription Drug Monitoring Program (PDMP), including unusually high-dose prescriptions, early refills, dangerous

combinations, patients who were given overlapping controlled substances prescriptions.   The affidavit identified the patients who fell within a pattern of prescriptions containing some or all of these red flags.   Even in his supplemental brief, the defendant has not challenged the accuracy or veracity of the PDMP data.   Examining the patient files was the only way to determine if the prescriptions were for a legitimate medical purpose.   Despite the defendant's argument that law enforcement should have simply interviewed patients and stopped, that is not how criminal investigations proceed.

As documented in the affidavit of probable cause, the data demonstrates that the defendant relied excessively on opioids at high doses, using predominantly 30 milligram dosages of oxycodone in conjunction with additional opioids extensively.   Often times, the defendant prescribed large monthly quantities of these high dosages and combination of opioids for most patients identified.   The affidavit notes that the defendant issued approximately 11,207 prescriptions for Schedule II controlled substances over a 42-month period of time – and he is not a pain management physician.   (SW Affidavit ¶ 40).   He is a

family doctor.   *Id.*   The affidavit further notes that the large majority of the prescriptions issued by the defendant were issued for Oxycodone, a Schedule II controlled substance, an opioid pain killer similar to morphine, demonstrated to be highly addictive and dangerous even if taken only in prescribed amounts and especially if taken over extended periods of time in high amounts.   *Id.*   Notably, the defendant makes no mention of the accuracy of the PDMP data associated with the patient files identified for seizure, as well as the entirety of the facts supporting probable cause.   According to the defendant's argument, if the patient was happy with the controlled substances and if the defendant took vital signs and checked their ears, nose and throat at each visit, then law enforcement should have stopped the investigation right there. According to the defendant, law enforcement should have ignored the multiple deaths and the multiple pharmacy reports and the data because some of the patients reported that the defendant required an occasional urinalysis and asked about their pain levels.   According to the defendant, if the patients were satisfied with all of the controlled substances prescribed to them by the defendant, then there was simply

no need for law enforcement to look any further.   Of course, if a

physician prescribes narcotics to keep patients happy rather than

healthy and alive, such practice does not equate to lawfulness.

Now the defendant intends to parade any number of witnesses in

to court in what can only result in a mini-trial before any scheduled

trial takes place, to testify that everything the defendant did was

medically appropriate, never mind the fact that none of the patients are

physicians themselves, and none of them will testify that the data is

incorrect, only that they liked how the defendant treated them.   The

defendants allegations are based on his own biased interpretations and

suggest little more than a desire to cross-examine the affiant.   Even

assuming a misstatement (a mistake with one patient's criminal

history), there is no suggestion that such misstatement was made in

"reckless" disregard for the truth or that such misstatement was

material to the magistrate judge's determination of probable cause.

The defendant's efforts under these circumstances should be rejected by

this court.   The defendant simply cannot and has not shown any

deliberate or reckless untruthfulness by the Government's affiant, or

that any omission or alleged false statement was material to the finding of probable cause.   *See Yusef*, 461 F.3d at 383 n.8;   *United States v. Ozar*, 50 F.3d 1440, 1444-45 (8th Cir. 1995);   *United States v. Brown*, 3 F.3d 673, 677 (3d Cir. 1993).

## IV.   Conclusion

For all the reasons stated herein, the Government respectfully requests that this court deny the defendant's motion to suppress in its entirety and for a *Franks* hearing.   First and foremost, the defendant lacks standing to challenge the seizure of the medical records at issue. Second, the defendant has failed to show that any of his alleged falsehoods and/or omissions would have caused the magistrate judge not to issue the warrant.   As such, the defendant has failed to meet his heavy burden and his request for a *Franks* hearing must fail.

Respectfully submitted,

BRUCE D. BRANDLER
Acting United States Attorney


By:   /s/ Michelle L. Olshefski
MICHELLE L. OLSHEFSKI
Assistant U.S. Attorney

Date:   August 9, 2021

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :    CRIM. NO. 3:CR-19-250
                                     :
            v.                     :    (JUDGE MARIANI)
                                     :
MARTIN EVERS,                 :    Electronically filed
            Defendant        :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of August, 2021, I caused the foregoing response to be filed via ECF and that counsel of record for the defendant is a filing user under the ECF system to include the following:

                          /s/ Michelle L. Olshefski
                          Michelle L. Olshefski
                          Assistant U.S. Attorney