UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :    CRIM. NO. 3:CR-19-250
     :
    v.     :    (Judge Mariani)
     :
MARTIN EVERS,     :
    Defendant     :

FILED
SCRANTON

MAR 08 2022

DEPUTY CLERK

## S U P E R S E D I N G   I N D I C T M E N T

At times material to this Superseding Indictment:

1.    The defendant, MARTIN EVERS (EVERS), was a physician licensed by the Commonwealth of Pennsylvania.   EVERS held a Pennsylvania medical license, as well as a Drug Enforcement Administration (DEA) registration number, and was employed in practice at the Bon Secours Medical Group, within the Middle District of Pennsylvania.   EVERS represented himself to be a specialist in internal medicine.

2.    The Controlled Substances Act (the Act) governs the manufacture, distribution, and dispensing of controlled substances in the United States. Under the Act, there are five schedules of controlled

substances – Schedules I, II, III, IV, and V.   Controlled substances are scheduled into these levels based upon their potential for abuse, among other things.   Abuse of Schedule II controlled substances may lead to severe psychological and/or physical dependence.

3.     Methadone is a synthetic opioid that contains methadone hydrochloride, a Schedule II controlled substance.   Methadone is roughly twice as potent as morphine in a single dose, but becomes much more potent than morphine with accumulation in the body.   In chronic users of high-dose opioids, methadone may be 10 times as potent as the morphine equivalent.   In high doses, Methadone may be 12 times as potent as the morphine equivalent.

4.     Fentanyl is a Schedule II narcotic (opioid) pain medicine that has a high risk for addiction.   Fentanyl is 70 - 100 times as potent as morphine.   A fentanyl transdermal system (fentanyl patch) contains a high concentration of the potent Schedule II opioid agonist, fentanyl.

5.     Schedule II opioid substances which include fentanyl, hydromorphone, methadone, morphine, oxycodone, and oxymorphone have the highest potential for abuse and associated risk of fatal

2

overdose due to respiratory depression.

6.     Benzodiazepines, such as diazepam, are Schedule IV controlled substances commonly known as tranquilizers.   When combined with other central nervous system (CNS) depressants such as alcoholic drinks and opioids, the potential for toxicity and fatal overdose increases exponentially.

7.     Title 21, United States Code, Section 841(a) (1), provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally … manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance."

8.     Title 21, United States Code, Section 802(10), provides that the term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for delivery.

9.   Title 21, United States Code, Section 802(11), provides that

the term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term "distributor" means a person who so delivers a controlled substance or a listed chemical.

10. Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

11. The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the

4

meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

12.    The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.   Chapter 16.92 provides minimum standards that shall be followed when prescribing or dispensing controlled substances and include; (a) the taking and recording of an initial medical history, (b) reevaluations of the condition diagnosed and the controlled substance involved, (c) patient counseling, and maintenance of patients' medical records.

13    As a medical doctor, EVERS was authorized to prescribe and/or dispense to patients Schedule II through V controlled substances and to prescribe medicine to patients, including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

THE GRAND JURY CHARGES:

## COUNT 1
## 21 U.S.C. § 841(a)(1)
## (Unlawful Distribution and Dispensing of a Controlled Substance)

14.    Paragraphs 1 through 13 are incorporated herein.

15.    From in or about October 2012 through September 11, 2014, "K.D." was a patient of EVERS.

16.    Throughout the doctor/patient relationship, EVERS was aware that "K.D." suffered from an opioid addiction.

17.    EVERS continued to knowingly and intentionally prescribe opioid medications to "K.D." despite knowing that "K.D." was chronically opioid dependent.

18.    EVERS continued to prescribe excessive amounts of controlled substances to "K.D." knowing that such practice could result in continued dependence, addiction, overdose, and death.

19.    On or about September 2, 2014, within the Middle District of Pennsylvania, the defendant,

**MARTIN EVERS,**

did knowingly and intentionally distribute and dispense to "K.D.", and

6

caused to be distributed and dispensed to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose, a controlled substance containing fentanyl, a Schedule II controlled substance.

In violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 2**
**21 U.S.C. § 841(a)(1)**
**(Unlawful Distribution and Dispensing of a Controlled Substance Resulting in Death and Serious Bodily Injury)**

20.   Paragraphs 1 through 18 are incorporated herein.

21.   On or about September 9, 2014, within the Middle District of Pennsylvania, the defendant,

**MARTIN EVERS,**

did knowingly and intentionally distribute and dispense to "K.D.", and caused to be distributed and dispensed to "K.D.", outside the usual course of professional practice and not for a legitimate medical purpose, a controlled substance containing methadone, a Schedule II controlled

7

substance, and a controlled substance containing diazepam (Valium), a Schedule IV controlled substance, and serious bodily injury and death of a person known to the grand jury as "K.D." resulted from the use of the controlled substances distributed and dispensed by the defendant.

In violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

**THE GRAND JURY FURTHER CHARGES:**

<u>COUNTS 3 through 38</u>
21 U.S.C. § 841(a)(1)
(Unlawful Distribution and Dispensing of a Controlled Substance)

22.    Paragraphs 1 through 13 are incorporated herein.

23.    From in or about December 2013 through February 11, 2019, "M.C." was a patient of EVERS.

24.    Throughout the doctor/patient relationship, EVERS failed to monitor "M.C.'s" response to high-dosages and high quantities of controlled substances he prescribed to her, and failed to consider the risks associated with the high-dosages and high quantities of the controlled substances he prescribed to "M.C."

25.    Throughout the doctor/patient relationship, EVERS failed to

8

adequately administer urine drug screens to "M.C." and failed to adequately address "M.C.'s" aberrant urine drug screen.

26.     Throughout the doctor/patient relationship, EVERS failed to adequately document a medical rationale in "M.C.'s" medical records related to the high-dosages and high quantities of the controlled substances he prescribed to "M.C."

27.     EVERS continued to prescribe excessive amounts of controlled substances to "M.C." knowing that such practice could result in dependence, addiction, overdose, and death.

28.     On or about the dates set forth below, in the Middle District of Pennsylvania, the defendant,

**MARTIN EVERS,**

did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, to "M.C.", outside the usual course of professional practice and not for a legitimate medical purpose, the Schedule II controlled substances, as listed below, each of which constitutes a separate count of this Superseding Indictment:

9

| COUNT | DATES OF DISTRIBUTION | PATIENT | CONTROLLED SUBSTANCE |
|---|---|---|---|
| | | | |
| 3 | July 3, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 4 | July 3, 2017 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 5 | July 31, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 6 | Aug. 22, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 7 | Sept. 24, 2017 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 8 | Sept. 24, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 9 | Oct. 20, 2017 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 10 | Oct. 20, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 11 | Nov. 15, 2017 | M.C. | Oxycodone HCL 30 mg (45) |
| 12 | Nov. 20, 2017 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 13 | Nov. 20, 2017 | M.C. | Oxycodone HCL 30 mg (270) |
| 14 | Dec. 15, 2017 | M.C. | Oxycodone HCL 30 mg (18) |
| 15 | Dec. 19, 2017 | M.C. | Oxycodone HCL 30 mg (180) |
| 16 | Dec. 21, 2017 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 17 | Jan. 18, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 18 | Jan. 18, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 19 | Feb. 16, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 20 | Feb. 16, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 21 | April 12, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 22 | May 9, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 23 | May 9, 2018 | M.C. | Oxycodone HCL 30 mg (270) |

| 24 | Jun 8, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 25 | July 5, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 26 | July 5, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 27 | Aug. 8, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 28 | Aug. 8, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 29 | Sept. 6, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 30 | Sept. 6, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 31 | Oct. 4, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 32 | Oct. 4, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 33 | Nov. 1, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 34 | Nov. 1, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 35 | Nov. 30, 2018 | M.C. | Fentanyl 50 mcg/hr. (10) |
| 36 | Nov. 30, 2018 | M.C. | Oxycodone HCL 30 mg (270) |
| 37 | Dec. 28, 2018 | M.C. | Oxycodone HCL 30 mg (240) |
| 38 | Jan. 25, 2019 | M.C. | Oxycodone HCL 30 mg (240) |

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C).

THE GRAND JURY FUTHER CHARGES:

## COUNT 39
### 21 U.S.C. § 841(a)(1)
### (Unlawful Distribution and Dispensing of a Controlled Substance Resulting in Death and Serious Bodily Injury)

29.   Paragraphs 1 through 13 and paragraphs 23 through 27 are incorporated herein.

30.   Beginning from on or about November 30, 2018, through February 5, 2019, within the Middle District of Pennsylvania, the defendant,

**MARTIN EVERS,**

did knowingly and intentionally distribute and dispense to "M.C.", and caused to be distributed and dispensed to "M.C.", outside the usual course of professional practice and not for a legitimate medical purpose, a controlled substance containing fentanyl, and a controlled substance containing oxycodone, both Schedule II controlled substances, and serious bodily injury and death of a person known to the grand jury as "M.C." resulted from the use of the controlled substances distributed and dispensed by the defendant.

In violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C).

**THE GRAND JURY FUTHER CHARGES:**

**COUNT 40 through 71**
**21 U.S.C. § 841(a)(1)**
**(Unlawful Distribution and Dispensing of a Controlled Substance)**

31.    Paragraphs 1 through 13 are incorporated herein.

32.    From in or about March 2013 through August 2019, "R.K." was a patient of EVERS.

33.    Throughout the doctor/patient relationship, EVERS failed to monitor "R.K.'s" response to high-dosages and high quantities of controlled substances he prescribed to him, and failed to consider the risks associated with the high-dosage and high quantities of the controlled substances he prescribed to "R.K."

34.    Throughout the doctor/patient relationship, EVERS failed to adequately administer urine drug screens to "R.K." and failed to adequately address "R.K.'s" aberrant urine drug screens.

35.    Throughout the doctor/patient relationship, EVERS failed to adequately document a medical rationale in "R.K.'s" medical records

13

related to the high-dosage and high quantities of the controlled substances he prescribed to "R.K."

36.    EVERS continued to prescribe excessive amounts of controlled substances to "R.K." knowing that such practice could result in dependence, addiction, overdose, and death.

37.    On or about the dates set forth below, in the Middle District of Pennsylvania, the defendant,

**MARTIN EVERS,**

did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, to "R.K.", outside the usual course of professional practice and not for a legitimate medical purpose, the Schedule II controlled substances, as listed below, each of which constitutes a separate count of this Superseding Indictment:

| COUNT | DATES OF DISTRIBUTION | PATIENT | CONTROLLED SUBSTANCE |
|-------|----------------------|---------|----------------------|
|       |                      |         |                      |
| 40    | Aug. 14, 2017        | R.K.    | Fentanyl 25 mcg/hr. (10) |
| 41    | Sept. 13, 2017       | R.K.    | Fentanyl 25 mcg/hr. (10) |
| 42    | Oct. 4, 2017         | R.K.    | Fentanyl 25 mcg/hr. (10) |
| 43    | Nov. 1, 2017         | R.K.    | Fentanyl 25 mcg/hr. (10) |

14

| 44 | Nov. 27, 2017 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 45 | Dec. 18, 2017 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 46 | Jan. 8, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 47 | Feb. 19, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 48 | March 21, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 49 | April 17, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 50 | May 17, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 51 | June 11, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 52 | July 9, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 53 | Aug. 6, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 54 | Sept. 2, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 55 | Oct. 1, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 56 | Oct. 31, 2018 | R.K. | Fentanyl 50 mcg/hr. (10) |
| 57 | Nov. 23, 2018 | R.K. | Oxycodone HCL 15 mg (100) |
| 58 | Nov. 23, 2018 | R.K. | Oxycodone HCL 30 mg (240) |
| 59 | Dec. 17, 2018 | R.K. | Oxycodone HCL 15 mg (100) |
| 60 | Dec. 17, 2018 | R.K. | Oxycodone HCL 30 mg (240) |
| 61 | Jan. 11, 2019 | R.K. | Oxycodone HCL 15 mg (100) |
| 62 | Jan. 11, 2019 | R.K. | Oxycodone HCL 30 mg (240) |
| 63 | Feb. 1, 2019 | R.K. | Oxycodone HCL 15 mg (100) |
| 64 | Feb. 1, 2019 | R.K. | Oxycodone HCL 30 mg (240) |
| 65 | Feb. 20, 2019 | R.K. | Oxycodone HCL 15 mg (100) |
| 66 | Feb. 25, 2019 | R.K. | Oxycodone HCL 30 mg (240) |

| 67 | March 12, 2019 | R.K. | Oxycodone HCL 15 mg (100) |
| 68 | March 15, 2019 | R.K. | Oxycodone HCL 30 mg (240) |
| 69 | April 2, 2019 | R.K. | Oxycodone HCL 15 mg (100) |
| 70 | April 2, 2019 | R.K. | Oxycodone HCL 30 mg (240) |
| 71 | April 22, 2019 | R.K. | Oxycodone HCL 15 mg (28) |

In violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C).

**THE GRAND JURY FINDS:**

**FORFEITURE ALLEGATION**

The allegations contained in Counts 1 through 71 of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853.

Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), the defendant,

**MARTIN EVERS,**

16

shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

By virtue of the commission of the offense charged in Counts 1 through 71 of this Superseding indictment by the defendant,

**MARTIN EVERS,**

any and all right, title, and interest the defendant may have had in any of the property involved in or traceable to the offenses alleged in Counts 1 through 71 of this Superseding Indictment is vested in the United States and is hereby forfeited to the United States pursuant to Title 21, United States Code, Section 853.

If any of the property involved in or traceable to the offenses alleged in Counts 1 through 71 of this Indictment, as a result of any act or omission of the defendant:

> a. cannot be located upon the exercise of due diligence;
>
> b. has been transferred or sold to, or deposited with, a

17

third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot
be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute
property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to 21 U.S.C. § 853.

A TRUE BILL

JOHN C. GURGANUS
United States Attorney

*Michelle Olshefski*
MICHELLE OLSHEFSKI
Assistant United States Attorney

3-8-22
Date

18