THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 3:19-CR-250 |
| | : | (JUDGE MARIANI) |
| MARTIN EVERS, | : | |
| | : | |
| Defendant. | : | |

FILED
SCRANTON

NOV 1 0 2022

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION

Defendant's Motion to Suppress, Exclude, and Limit Evidence and Witnesses Based Upon Untimely Disclosures by the Government (Doc. 211), filed on October 25, 2022, is pending before the Court.  In the supporting brief, Defendant alleges that the Government had just disclosed "(1) a second interview report of Dr. Evers taken on September 4, 2019, the date of his arrest; (2) five experts it intends to call at trial; and (3) a witness it intends to call to provide evidence pursuant to Federal Rule of Evidence 404(b) of other bad acts." (Doc. 212 at 1.)   Defendant maintains that "the enormity of prejudice to Dr. Evers resulting from these untimely disclosures cannot be overstated." (*Id.*)  The Government responds that "if any discovery violation occurred, it was inadvertent and not willful or in bad faith." (Doc. 234 at 1.)  The Government also states that Defendant must show "prejudice to substantial rights" to exclude the evidence and he cannot show such prejudice. (*Id.*)  For the reasons discussed below, the Court will deny Defendant's motion.

## II. ANALYSIS

### A. September 4, 2019, Interview

Defendant states that the Government sent the September 4, 2019, statement on October 24, 2022, in violation of Federal Rule of Criminal Procedure 16(a)(1)(A). (Doc. 212 at 4.) He asserts that the appropriate sanction for this violation is exclusion of the statement from trial pursuant to Federal Rule of Criminal Procedure (d)(2)(C). (*Id.* at 5.)

Federal Rule of Criminal Procedure 16(a)(1)(A) provides:

> Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

*Id.* Federal Rule of Criminal Procedure 16(d)(2) provides:

> If a party fails to comply with this rule, the court may:
>
> **(A)** order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> **(B)** grant a continuance;
>
> **(C)** prohibit that party from introducing the undisclosed evidence; or
>
> **(D)** enter any other order that is just under the circumstances.

*Id.*

*United States v. Lopez*, 271 F.3d 472 (3d Cir. 2001), noted that Rule 16(d)(2) "does not require a district court to do anything—Rule 16 merely states that the court 'may' take such actions." *Id.* at 483. Harm caused by the violation is a key consideration in

2

determining what court action is appropriate. *Id.* at 483-84. The question of whether the defendant has shown prejudice resulting from the violation is the starting point for the inquiry into what, if any, sanction should be imposed in a given situation. *See id.* at 484; *United States v. Tagliamonte*, 340 F. App'x 73, 81 (3d Cir. 2009) (not precedential); *United States v. Colletti*, 984 F.2d 1339, 1345 (3d Cir.1992), *abrogated on other grounds by United States v. Fiorelli,* 133 F.3d 218, 222–23 (3d Cir.1998)).

Defendant states that the "Government's surprise disclosure of his witness statement three years after it was obtained, and twenty days before trial, warrants the most extreme sanction available." (Doc. 212 at 4-5.) In his supporting brief, Defendant does not otherwise provide argument as to why this disclosure should be excluded.

The Government responds that Defendant cannot show prejudice because "the statement he complains of contains no substantially new information not otherwise contained in his initial interview conducted on August 6, 2019, as well as what is contained in his video/audio interview of September 4, 2019." (Doc. 234 at 3.) In support of this conclusion, the Government provides specific factual assertions related to the interview at issue which was the second interview to take place on September 4, 2019, which are set out below.

- "The defendant's admission that he is not an addiction specialist is factually correct and therefore, not new or prejudicial information." (Doc. 234 at 3.)

- "The defendant's claim that had K.D.'s mother informed him that K.D. was abusing opioids, he would have prescribed differently is not new information to the defendant and the defendant is not otherwise shielded from this information." (*Id.* at 4.)

- "[T]he defendant's own medical records document that K.D. had undergone multiple rehabs before seeing him and while seeing him." (*Id.*)

- "The defendant documented the names of the rehabs K.D. was in and out of throughout the 60 days leading up to her death." (*Id.*)

- "The fact that the defendant spoke of an alleged change in the law as a reason to curtail all of his opioid prescribing as of a certain date was previously spoken of in the earlier interview." (*Id.*)

- "The defendant posted signs in his office wherein he advised his patients that a change in the law was one of the reasons why he could no longer prescribe controlled narcotics for them." (*Id.*)

- "The defendant's statement that he allows for only one strike with his patients and then he kicks them out was simply a regurgitation of what he stated to investigators on August 6, 2019 and again in the audio/video recording of his interview at the time of his arrest on September 4, 2019." (*Id.*)

The Government states that, other than the specific facts cited above, the remainder of the interview relates to uncharged patients and it does not intend to introduce evidence about Defendant's other patients in its case-in-chief. (Doc. 234 at 5.) Regarding culpability

4

for the alleged violation, an email to defense counsel dated  October 24, 2022, indicates that the Government had "only discovered in preparation for trial that [the second September 4, 2019, interview] was not part of our previous disclosures."  (Doc. 212-1 at 2.) The email further states that "the interview was a continuance of the video interview of the defendant on the date of his arrest" and attributes the lack of disclosure to human error. (*Id.*)

In his reply brief, Defendant states that the last sentence of the interview where Dr. Evers states "[m]y objective is to avoid being incarcerated. I'll call it an early retirement" is highly prejudicial and, at a minimum, this sentence should be excluded.  (Doc. 254 at 3 (citing Doc. 212, Ex. A at 4).)

Given Defendant's failure to identify specific prejudice other than the one sentence identified in his reply brief, the Government's factual assertions pointing to a lack of prejudice, and the reason provided for the lack of disclosure, the Court concludes that sanctions are not appropriate for the recent disclosure of the second September 4, 2019, interview.  Therefore, Defendant's Motion will be denied insofar as sanctions are sought on this basis.  However, insofar as Defendant requests exclusion of the final sentence of the second September 4, 2019, interview, the Court finds nothing in Defendant's reply brief that suggests any sound reason for this statement by Defendant to be considered unfairly prejudicial.  Nonetheless, Defendant of course retains the right to object should the Government seek admission of this portion of the interview.

## B. **Expert Testimony**

Defendant's supporting brief identifies issues regarding the Government's disclosures contained in the Government's Notice of Expert Testimony ("Notice") filed on October 24, 2022, related to Dr. Scott Epstein, Dr. Michael Coyer, and Dr. Gary Ross. (Doc. 212 at 8-11.)  Because the Government indicates in its opposition brief that it does not intend to call Dr. Ross (Doc. 234 at 6 n.1), the Court will address only Defendant's arguments as to Dr. Epstein and Dr. Coyer.  Defendant asserts that, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the untimely and deficient disclosure related to Dr. Epstein's opinion and testimony should be excluded outright and the untimely and deficient disclosure related to Dr. Coyer's testimony should be limited to the four corners of his report.  (Doc. 212 at 9.)

Regarding the testimony of expert witnesses, Federal Rule of Criminal Procedure 16(a)(1)(G) provides in pertinent part:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).  Rule 16 does not specify a time for disclosure of expert testimony.

In his reply brief, Defendant asserts that the Court should nonetheless find the

disclosure untimely.[1]   The Court declines to do so because the primary inquiry regarding the

---

[1] In his supporting brief, Defendant asserts that the rule requires more as to timing and content. (*See* Doc. 212 at 5-6.)  However, Defendant cites the amended Rule (a)(1)(G) which does not become effective until December 1, 2022.  The current rule does not contain a timing provision or specify content beyond that quoted in the text.  Defendant recognizes this in his reply brief but asserts that the new rule may become effective before expert testimony in this case and, in any event, the Court should find the disclosures untimely and improper because they were made long after his request for expert information pursuant to Federal Rule of Criminal Procedure 16 on July 23, 2020. (Doc. 254 at 4 (citing Doc. 61).)   The Court declines to do so for the reason stated in the text.

The proposed amendment to the text of subdivision (a)(1)(G) which becomes effective December 1, 2022, absent contrary Congressional action is divided into six parts which include "Duty to Disclose," "Time to Disclose," and "Contents of Disclosure."  Fed. R. Crim. Pro. 16(a)(1)(G)(i)-(iii).  Though not relevant to the matters under consideration here because the amendments are not yet in effect, the amended rule provides in part as follows:

**(i) Duty to Disclose.** At the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C). If the government requests discovery under the second bullet point in (b)(1)(C)(i) and the defendant complies, the government must, at the defendant's request, disclose to the defendant, in writing, the information required by (iii) for testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 on the issue of the defendant's mental condition.

**(ii) Time to Disclose.** The court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence.

**(iii) Contents of the Disclosure.** The disclosure for each expert witness must contain:

• a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

• the bases and reasons for them;

• the witness's qualifications, including a list of all publications authored in the previous 10 years; and

propriety of sanctions is whether Defendant has shown prejudice. *See Lopez*, 271 F.3d at

484; *Tagliamonte*, 340 F. App'x at 81; *Colletti*, 984 F.2d at 1345. Therefore, the Court will

address only Defendant's argument that they are deficient.

### 1. Dr. Epstein

Defendant states that the Government's disclosure regarding Dr. Epstein fails to

satisfy Rule 16(a)(1)(G) criteria:

> [t]he Government states that Dr. Epstein will testify about "his initial
> evaluation of the level of opioid dosing provided by the defendant." (ECF 209
> at 3.)  However, the Government fails to state what [sic] substance of Dr.
> Epstein's evaluation. Further, the Government identifies no bases or reasons
> to support whatever opinion Dr. Epstein reached and fails to provide a list of
> Dr. Epstein's publications and recent trial and deposition experience.

(Doc. 212 at 8.)

The Court first notes that Rule 16(a)(1)(G) does not currently require information

about publications or recent trial and deposition experience. *See supra* pp. 5-6 & n.1.

In response to Defendant's assertions, the Government responds that it did not

indicate that Dr. Epstein would offer an expert opinion in its Notice (Doc. 209).  Rather, "out

of an abundance of caution, the Government's [sic] noticed Dr. Epstein as a physician with

---

• a list of all other cases in which, during the previous 4 years, the witness has testified as
an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G) (Text of subdivision effective December 1, 2022, absent contrary
Congressional action.)

special skill and expertise in internal medicine and pain management." (*Id.*)  The

Government adds that

> Dr. Epstein is qualified to testify about the treatment and care he provided to
> R.K. after assuming R.K.'s care from the defendant in April of 2019; his initial
> evaluation of the level of opioid dosing provided by the defendant to R.K. based
> on his own special skill and expertise; his efforts to reduce R.K.'s pain medicine
> and why he made those efforts in light of R.K.'s compromised health
> circumstances; and the level of success he achieved weaning R.K. off of the
> high dose opioids previously prescribed to him by the defendant.

(Doc. 234 at 7-8.)  The Government identifies the basis of his testimony to be "what is in his

own medical records for R.K., provided to the Government by the defendant" on October 19,

2022, and he will not be asked to render an opinion about Dr. Evers' previous treatment of

R.K.  (*Id.* at 8.)  The Government also identifies the purpose for which Dr. Epstein's

testimony will be offered: the testimony will be offered "to evidence what a physician

operating within the usual course of professional practice and for legitimate medical

purposes does when treating a high-risk patient with high-risk and dangerous controlled

substances."  (*Id.*)   Finally, the Government notes that Dr. Epstein's curriculum vitae has

been previously provided to Defendant.  (*Id.*)

The Government Notice of Expert Testimony provides the substance of Dr. Epstein's

testimony: "Dr. Epstein will offer testimony about the treatment and care he provided

to RK after assuming RK's care from the defendant; his initial evaluation of the level of

opioid dosing provided by the defendant to RK; his efforts to reduce RK's pain medicine and

why he made those efforts; and the level of success he achieved."  (Doc. 209 at 2-3.)  The

footnote attached to this statement notes that Defendant "is in possession of all medical records related to Dr. Epstein's care of RK." (*Id.* at 3 n.1.)  With the clarification in the Government's opposition brief regarding the basis for Dr. Epstein's testimony and previous receipt of Dr. Epstein's qualifications (Doc. 234 at 8), the requirements of Rule 16(a)(1)(G) are satisfied when the Notice and subsequent clarifications are considered together.

In his supporting brief, Defendant did not identify prejudice resulting from the alleged violation beyond general untimeliness, a showing which is central to a court's decision to impose sanctions.  *See Lopez*, 271 F.3d at 484; *Tagliamonte*, 340 F. App'x at 81; *Colletti*, 984 F.2d at 1345.  In his reply brief, does not refute the Government's assertions about Dr. Epstein's proposed testimony and its basis but asserts generally that

> the Government's belated expert disclosures resulted in prejudice to Dr. Evers whose own expert was then forced to expedite review of and respond to the new disclosures under the Government created pressure of not delaying trial. Dr. Evers's expert was not only forced to react to the belated expert disclosures, but also the belated notice of proposed 404(b) testimony as well as other records and photographs produced only in recent weeks and a major change to the scope of the case created by the Government's last minute amendment to the Superseding Indictment.

(Doc. 254 at 5.)  The need for expedited review of new disclosures by Defendant's expert and added pressure to respond to the new disclosures does not demonstrate prejudice to substantial rights or unfair prejudice such that he has been impaired from the presentation of a complete defense which is the appropriate inquiry in deciding whether sanctions are warranted.  *See Lopez*, 271 F.3d at 483-84; *Tagliamonte*, 340 F. App'x at 81.  Therefore,

the Court finds no basis to exclude the testimony of Dr. Epstein and Defendant's Motion will be denied insofar as he seeks exclusion of Dr. Epstein's testimony.

## 2. Dr. Coyer

Defendant's objections to the Notice's explanation of Dr. Coyer's testimony relate to Dr. Coyer's interpretation of postmortem toxicological findings as to K.D. and M.C., the impact of the concentrations of the controlled substances found on the cause of death for both, and his opinions of the "but for" cause of death as to K.D. and M.C. (Doc. 212 at 9.) Defendant states that the Notice regarding Dr. Coyer fails to identify the bases and reasons for his opinions and, therefore, his testimony should be limited to the "four corners of the toxicology report he signed on December 8, 2014 and he should be expressly precluded from offering expert opinion as to cause of death of K.D. and M.C." (*Id.* at 9-10.)   Because the Court granted the Government's Motion for Leave to Amend Count 2 of the Superseding Indictment (Doc. 235) and the motion sought to amend Count 2 of the superseding indictment by withdrawing the additional allegation that "serious bodily injury and death of "K.D." resulted from the use of the controlled substances distributed and dispensed by the defendant (see Doc. 246 at 1), Defendant's objections to the report as they relate to K.D. are moot.

As to M.C., the Government presents numerous factual averments, including those set out below.

- The toxicology report of M.C., about which Dr. Michael Coyer will testify, was disclosed to the defendant eight (8) months ago. (Doc. 234 at 7.)

- The autopsy report that incorporated the toxicological results in order to determine M.C.'s cause of death as mixed substance toxicity, was disclosed at the same time. (*Id*.)

- Defendant "long ago consulted with Dr. Coyer about other issues in this case and is extremely familiar with Dr. Coyer.  (*Id.* at 9.)

- Dr. Coyer explained the basis for his opinion in his written report disclosed to the defendant after notice. (*Id*.)

- "In his report, Dr. Coyer articulates what his opinion is, how he reached it, and all of the information he relied on to reach his opinion."  (*Id*.)

- Dr. Coyer did not rely on anything that has not long been in Defendant's possession. (*Id*.)

The Court finds that the Government's factual averments indicate that the information previously disclosed to Defendant, the Notice, Dr. Coyer's written report provided to Defendant following Notice, and the asserted content of that report, taken together, satisfy the requirements of Rule 16(a)(1)(G). As with Dr. Epstein, the Court also finds it significant that Defendant has claimed, but not shown, prejudice resulting from the alleged violation and, without such a showing, sanctions are not warranted.  *See Lopez*, 271 F.3d at 484; *Tagliamonte*, 340 F. App'x at 81; *Colletti*, 984 F.2d at 1345.  For the reasons discussed as to Dr. Epstein, Defendant's reply brief provides no basis to alter this conclusion.

## C. **Pharmacists' Evidence**

Defendant also seeks to exclude testimony from Walmart pharmacists about which he was notified in an email from the Government on October 24, 2022.   (Doc. 212 at 12.) (Doc. 212 at 12-13 (emphasis added).)  Defendant characterizes the email as "late notice of . . . 'other acts' or 'wrongs' evidence" and states that it is "clearly prejudicial." (*Id.* at 13.) Defendant contends the Court should exclude the proposed 404(b) evidence based on the Government's untimely disclosure. (*Id.* at 13.)

The pharmacists' testimony that is the subject of this aspect of Defendant's motion is also the subject of Defendant's Motion to Preclude Government from Eliciting Testimony from Non-Qualified Witnesses and/or Exclude 404(b) Evidence (Doc. 249) filed on November 9, 2022, which the Court denied by Order of November 10, 2022 (Doc. 253). The Court denied the motion based on the conclusion that

> what evidence will be admissible at trial and for what purpose will be determined at trial at such time as the Court is in a position to do any of the following: 1) hear a detailed proffer; 2) conduct, if necessary, proceedings pursuant to the Court's November 10, 2022, Order regarding a Daubert Hearing (Doc. 251); or 3) consider an objection by counsel on the presentation of testimony from any witness.

(Doc. 253 at 1.)

Because the matter presented in the pending Motion raises the same or similar arguments in support of exclusion of testimony from a pharmacist, the Court concludes here that this aspect of Defendant's Motion is properly denied for the reasons stated above.[2]

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress, Exclude, and Limit Evidence and Witnesses Based Upon Untimely Disclosures by the Government (Doc. 211) will be denied.  A separate Order will be entered.

_____
Robert D. Mariani
United States District Judge

_____

[2] In his reply brief, Defendant notes that the Court's November 10, 2022, Order (Doc. 253) regarding Defendant's Motion to Preclude Government from Eliciting Testimony from Non-Qualified Witnesses and/or Exclude 404(b) Evidence (Doc. 249) renders the issue of pharmacist testimony moot. (Doc. 254 at 2.)